COMMONWEALTH vs. JOSE MALDONADO.

Hampden. February 9, 1983. — July 7, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Criminal*, Mistrial, Capital case, Instructions to jury. *Homicide. Constitutional Law*, Waiver of constitutional rights. *Waiver.*

At the trial of an indictment for murder in the first degree the judge did not abuse his discretion by denying the defendant's motion for a mistrial on the ground that a witness's history of hostility toward him suggested that she had been attempting to influence the jury when she testified, "He wasn't supposed to be ten feet near me, it was a violation of his parole." [628-629]

Evidence in connection with a defendant's motion to suppress his statements made to the police warranted the judge's findings that the defendant, an Hispanic, was fully aware of his Miranda rights but elected to waive them as a result of a voluntary and intelligent decision on his part to make the statements to the police. [629-631]

At a criminal trial, a judge's statements in his charge to the jury, singling out the defendant's flight from the scene of the crime and certain inculpatory statements he made to the police as "some aspects of this case that are important," did not create a substantial risk of a miscarriage of justice when viewed in the context of the judge's entire charge. [631-632]

Neither evidence that the defendant and the victim had been quarreling nor the fact that the defendant was intoxicated when he committed the crime justified granting relief pursuant to G. L. c. 278, § 33E, to a defendant convicted of murder in the first degree, inasmuch as the judge had properly instructed the jury on the effect of voluntary consumption of alcohol on the question of premeditation, and there were no mitigating factors which would have justified such relief. [632-633]

INDICTMENT found and returned in the Superior Court Department on February 8, 1980.

The case was tried before *Moriarty*, J.

*John F. Donahue* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

LYNCH, J.   The defendant was convicted of the murder in
the first degree of Lydia Velez.  He contends that the trial
judge erred in denying his motion for a mistrial, in admit-
ting evidence of his custodial interrogation, and in his in-
structions to the jury.[1]  The defendant seeks a new trial or
entry of a verdict of a lesser degree of guilt pursuant to our
powers under G. L. c. 278, § 33E.  We affirm the judg-
ment.

We summarize the material evidence.  Sandra Velez, a
former girl friend of the defendant, testified that on the
afternoon of February 6, 1980, the defendant broke a pane
of glass to gain entry into her Holyoke apartment.  He ap-
peared drunk and he passed out several times while in the
apartment.  He either brought a knife with him or obtained
one there, leaving it behind when he left.  He told Sandra
Velez that the victim, to whom she was not related, and one
Patricia Guyon, another former girl friend, had been
spreading rumors about him.  Guyon had also threatened
his life.  After the defendant left, one Johnny Valasquez
returned for the knife.

Patricia Guyon testified that at approximately 10 P.M. the
defendant and one Jose Torres appeared at the apartment of
the victim, Lydia Velez, in Holyoke, where Guyon was vis-
iting.  Torres left a short time later.  The defendant asked
Guyon if she had any "problems" with him, and she said
that she did not.  The defendant was drinking, staggering,
and slurring his speech.  He gave Guyon, or she took from
him, a knife, which she placed behind the cushion of a
chair.  The defendant then said he wanted to speak to the
victim alone.  He was given back his knife.  The defendant,
Guyon, and the victim moved from the living room to the
kitchen.  The defendant and the victim began to argue.  He

---

[1] After oral argument the court granted the defendant leave to file a pro
se brief or other memorandum.  He requested several extensions on the fil-
ing date, the last of which expired on June 2, 1983.  By letter to the clerk
of this court, dated June 2, 1983, the defendant states that his "pro se
papers" were mailed on June 1, 1983.  However, no additional written
argument has been received from him as of the date of this opinion.

accused her of trying to break up his romances. The victim began to scream at him to leave and a struggle ensued. Guyon saw the defendant strike at the victim's throat with the knife and she ran from the apartment to seek help. When Guyon returned, the victim was slumped in a corner outside the apartment and the defendant was pulling a knife out of her chest and putting it back in. The victim received six stab wounds, one of which penetrated her heart and one her lung.

The defendant testified that he was drunk that evening; that he and Johnny Valasquez were in the victim's apartment when Patricia Guyon arrived, that he saw something shining in Guyon's hand, that she came at him, and that the victim came between them trying to stop her. He pushed the victim into Guyon so that he could get away. He denied having a knife in the victim's apartment.

The defendant fled to an apartment building across the street and subsequently to Hartford, Connecticut, where he was arrested on February 11, 1980, by police officers from Hartford and Holyoke. While at the Hartford police station, the defendant was questioned by a Holyoke police officer. He denied having stabbed the victim, stated that Guyon had produced the knife, that the three of them had struggled for it, that he may have stabbed the victim but he was drunk, unclear as to the events of that evening, and that he fled because he was frightened.

1. *Motion for a mistrial.* In response to a question by the prosecutor about whether she had wanted to call the police while the defendant was in the victim's apartment, Patricia Guyon testified, "He wasn't supposed to be ten feet near me, it was a violation of his parole." On objection from defense counsel, the judge ordered the answer struck. The defendant then moved for a mistrial, on the ground that the witness's history of hostility toward the defendant suggested that she had been attempting to influence the jury. The judge denied the motion, instructing the jury "as strongly as I can, completely disregard the last statement by the witness. It has absolutely nothing to do with this trial." The

judge cautioned the witness, in the jury's presence, not to volunteer testimony again.

The decision whether to declare a mistrial is within the judge's discretion. *Commonwealth* v. *Early,* 349 Mass. 636, 637 (1965). The defendant has not shown an abuse of discretion on this record. He himself called a probation officer who testified that the defendant was on probation at the time of the crime. His own testimony made reference to difficulties with the police. Evidence of the defendant's prior convictions, including two convictions for assault and battery, was introduced to impeach him. Thus, even if the testimony of Guyon had not been struck, it is doubtful that the defendant could show any prejudice arising from its admission. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 373 (1978); *Commonwealth* v. *Hanley,* 337 Mass. 384, 394-395, cert. denied, 358 U.S. 850 (1958). The judge's striking the testimony and promptly instructing the jury to disregard it were sufficient to cure any possible prejudice. *Commonwealth* v. *Chubbuck,* 384 Mass. 746, 753 (1981), citing *Commonwealth* v. *Hoffer, supra* at 372-373.

2. *Evidence of the defendant's custodial statements.* After a voir dire, the judge allowed a Holyoke police officer to testify from his written report of the statements made by the defendant after his arrest.[2] The defendant urges that there was "little if any evidence that [he], an Hispanic, had made an intelligent and voluntary waiver of his [constitutional] rights." We find no error. A judge's finding of voluntary waiver is "entitled to substantial deference by this court." *Commonwealth* v. *White,* 374 Mass. 132, 138 (1977), aff'd by an equally divided Court, 439 U.S. 280 (1978). In reviewing a judge's determination that a volun-

___

[2] The defendant's first trial, at which the same judge presided, resulted in a mistrial when defense counsel became ill and could not continue. The judge conducted a voir dire on the defendant's motion to suppress the statements at each of the trials. The principal ground advanced by the defendant at his first trial, that he had not been provided a copy of the report of his admissions during pretrial discovery, was not renewed at the second trial and is not a subject of this appeal.

tary waiver was made, we leave undisturbed his subsidiary findings if warranted by the evidence, but his ultimate conclusions are subject to our review. See *Commonwealth* v. *Wilborne*, 382 Mass. 241, 251 (1981). Our determination is based upon an examination of "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Commonwealth* v. *Daniels*, 366 Mass. 601, 606 (1975), quoting *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973). If the interrogation takes place without an attorney present, the burden is on the Commonwealth to establish a voluntary, knowing, and intelligent waiver. *Commonwealth* v. *Hosey*, 368 Mass. 571, 576-577 (1975).[3] This is so even if the evidence clearly shows that the Miranda warnings were carefully read to the defendant before interrogation began. See *Commonwealth* v. *Hooks*, 375 Mass. 284, 288 (1978). Here, the judge found that the defendant approached the Holyoke police officer at the Hartford police station, called him by name, and said, "I want to talk to you." After the defendant was booked, the officer read him the Miranda warnings and asked if he understood them and if he still wished to talk. The defendant said that he did. The judge found that he "was fully aware of his rights but elected to waive them . . . [as a] result of a voluntary and intelligent decision on his part." The judge also noted that the two grounds presented in the defendant's motion to suppress his statements were the failure of the Commonwealth to provide him with a copy of the report of the interrogation, see note 2, *supra*, and a contention that he had not been given the Miranda warnings prior to questioning. No argument was made below that he did not understand the Miranda warnings. Apart from his reference in this court to being Hispanic, the record before us is bare of any assertion or in-

---

[3] This case was tried before our decision in *Commonwealth* v. *Day*, 387 Mass. 915 (1983), in which we held that decisions made on motions to suppress after that date must apply the rule that waiver must be proved beyond a reasonable doubt. *Id.* at 920 n.10.

dication by the defendant that he did not understand the English language, in which he testified, or the words of the police officer.[4] Contrast *Commonwealth* v. *Santo,* 375 Mass. 299, 302-303 (1978) (defendant argued at trial that waiver of Miranda rights, after warnings administered in English, was involuntary because he did not understand English). There was no evidence tending to show that the police could not infer from the circumstances, including the defendant's outward behavior, and most notably his indication that he understood and waived his rights and wished to talk, that he understood the import of the Miranda warnings. See *Commonwealth* v. *Garcia,* 379 Mass. 422, 426-431 (1980) (defendant challenged waiver of rights, following Miranda warnings, administered in English and then, as a precaution, in Spanish, on the basis of his difficulty in speaking and understanding English). See also *Commonwealth* v. *Tavares,* 385 Mass. 140, 145-146 (1982). In any event, in view of the defendant's own testimony about the events which transpired at the victim's apartment, the admission of his statements to the police did not create a substantial risk of a miscarriage of justice.

3. *The judge's instructions to the jury.* The defendant claims that the judge's singling out his flight from the scene and his statements to police as "some aspects of this case that are important" was prejudicial error. He made no objection to the charge at trial. Therefore we review his claim on the basis of whether the jury instructions created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Howell,* 386 Mass. 738, 739 (1982). The judge gave lengthy and comprehensive instructions in which he characterized the concept of reasonable doubt as "important" and the

---

[4] An interpreter was provided at the trial; at the request of the defendant, the interpreter remained on only a "stand-by" basis. Defense counsel stated to the court that the defendant "has understanding of the English language both speaking and understanding it but there are words he does not understand." The defendant did not resort to the interpreter during his testimony except to have two letters he wrote to Sandra Velez, in a mixture of English and Spanish, translated for the jury.

presumption of innocence as "extremely important." "Error in a charge is determined by reading the charge as a whole, and not by scrutinizing bits and pieces removed from their context." *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981). Viewed as a whole, the judge's charge fully and fairly imparted to the jury their duties and responsibilities. *Id.* See *Commonwealth* v. *Perry*, 385 Mass. 639, 647-648 (1982).

4. *Relief under G. L. c. 278, § 33E.* The defendant argues that his drunken condition and the escalating argument among him, the victim, and Patricia Guyon resulted in an impulsive act. He urges us to use our discretionary power under G. L. c. 278, § 33E, to order a new trial or to direct the entry of a verdict of a lesser degree of guilt. We have reviewed the record with care and find no basis for exercising our power to alter the verdict. There was evidence that the defendant came to the victim's apartment bearing the weapon that killed her, and retrieved it during the argument. This evidence is indicative of premeditation. See *Commonwealth* v. *Almon*, 387 Mass. 599, 605 (1982). Compare and contrast *Commonwealth* v. *Williams*, 364 Mass. 145, 152 (1973); *Commonwealth* v. *Baker*, 346 Mass. 107, 119 (1963). There was no evidence that the victim physically threatened or assaulted the defendant. See *Commonwealth* v. *Almon, supra* at 606. Although the victim and the defendant were quarreling heatedly, the circumstances do not evince an act "in the heat of a sudden affray . . . in the heat of passion, as a result of uncontrolled anger and violent action on the part of both the defendant and the decedent." *Commonwealth* v. *Ransom*, 358 Mass. 580, 583 (1971). See *Commonwealth* v. *Dias*, 373 Mass. 412, 418 (1977).

There was strong evidence that the defendant was intoxicated when the crime was committed. The judge properly instructed the jury that intoxication should be considered on the question of deliberate premeditation.[5] *Commonwealth*

---

[5] The judge instructed the jury that they could return a verdict of murder in the first degree premised on deliberate premeditation or ex-

v. *Appleby*, 358 Mass. 407, 415-416 (1970). The jury either concluded that deliberate premeditation existed, or that a verdict of murder in the first degree was warranted on the basis of extreme atrocity or cruelty. *Id.*[6] Compare *Commonwealth* v. *King*, 374 Mass. 501 (1978), in which we reduced a conviction to murder in the second degree where the victim and the defendant had hitherto been friendly, the weapon was present fortuitously, the killing occurred during a "senseless brawl," and there was evidence that both the victim and the defendant were intoxicated. *Id.* at 506, 507. The judge had instructed the jury on murder in the first degree by deliberately premeditated malice aforethought, but had not given an instruction on voluntary intoxication. *Id.* at 505. Where a proper instruction was given on the effect of voluntary consumption of alcohol on the question of premeditation, and in the absence of mitigating factors such as were present in *Commonwealth* v. *King, supra,* we will not disturb the jury's verdict. See *Commonwealth* v. *Podlaski*, 377 Mass. 339, 350 (1979).

*Judgment affirmed.*

treme atrocity or cruelty, or both. He also gave instructions on murder in the second degree and manslaughter.

[6] The case was tried prior to our decision in *Commonwealth* v. *Perry*, 385 Mass. 639 (1982), where we held the defendant "was entitled to have the jurors determine as one of the circumstances or facts in the case whether the defendant was so intoxicated at the time the murder was committed that his criminal culpability should be reduced" (footnote omitted). *Id.* at 649. We have recently held that "*Perry* is the law . . . in cases tried after our decision in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980)." *Commonwealth* v. *Breese, ante* 540, 541 (1983). No question of the judge's failure to instruct the jury to consider the defendant's intoxication on the question of extreme atrocity or cruelty has been argued on appeal.