COMMONWEALTH vs. ROBERT S. JORDAN (No. 1).

Plymouth. January 7, 1986. — May 8, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence*, Other offense, State of mind, Relevancy and materiality.

At the trial of indictments for armed assault with intent to murder, assault and battery by means of a dangerous weapon, and kidnapping, the judge did not err in admitting evidence of beatings and mistreatment of the victim by the defendant at various times from five to seven months prior to the events on which the indictments were based, since this evidence was probative of the defendant's mental state and his intent to murder the victim at the time of the offenses with which he was charged. [491-492]

At the trial of indictments for armed assault with intent to murder, assault and battery by means of a dangerous weapon, and kidnapping, the judge did not err in admitting evidence of the defendant's abuse of the victim's dog, since the jury could properly infer that the defendant's conduct toward the dog was expressive of his hostility toward the victim, and since, in light of other evidence of the defendant's conduct, the inflammatory character of the challenged evidence did not outweigh its probative value. [492-493]

INDICTMENTS found and returned in the Superior Court Department on November 9, 1982.

The cases were tried before *Edith W. Fine, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael W. Reilly* for the defendant.

*Robert P. Snell,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Robert S. Jordan, stands convicted of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (1984 ed.), and kidnapping, G. L. c. 265, § 26 (1984 ed.).[1] He appeals, alleging error in the admission

[1] An assault and battery conviction was placed on file with the defendant's consent. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975).

of evidence of prior beatings of the victim and in the admission of evidence as to the victim's observations of the defendant with her dog during the crimes. We transferred the case to this court on our own motion. We affirm.

We summarize the evidence. On November 2, 1982, the victim, who was living with the defendant, arrived home at approximately 7:30 P.M. She was late. The defendant disbelieved her explanation as to why she was late and began to beat her. He ripped her clothing, and used silver duct tape to wind around her head and mouth. He bound her hands and legs together behind her back. As she lay in this trussed state, he proceeded to beat her and kick her all over her body, while making detailed threats to murder her and her father. During the beating the defendant lifted the victim's head and then pounded her face on the floor.

The victim saw the defendant raise her small dog above his head, throw it down on the ground, and "sic" his big dog on it. The defendant said to the victim that everything was her fault, that he hated her, that he wanted to get rid of her, and that he was beating her because he loved her.

The victim lay bound for twelve hours. During that period, she urinated on the floor. The defendant wiped the floor, stuffed the urine-soaked rag in the victim's mouth, and taped it shut. The defendant released the victim sometime the following morning and put her in the shower. Shortly thereafter, her father and two policemen arrived at the house.[2] They observed the victim emerging from the bathroom area with one towel wrapped around her body and another covering her head. She was "sobbing," had "a fat lip," and bruises on her back and legs. She asked for their help in leaving but would not discuss what had happened. She did not remove the towel from her hair.

---

[2] The victim's father called the police in response to a telephone call he received from the victim's sister, Judy. The sister said that she had gone to the house earlier that morning and became uneasy when she observed her sister's dog unattended in the yard and then received no response to her knocking. As the victim's sister drove away, the defendant came after her in his car and told her that the victim was "home crying," that the victim was "insane," and that if Judy went back to the house, he would have her arrested.

The victim was taken to the hospital. When the towel was removed, the police observed "big clumps of duct tape in her hair, [j]ust all over her head, hanging from everywhere." The victim's head had to be sheared. The victim's injuries were consistent with a beating. She told the doctor that these injuries were inflicted by her boyfriend.[3]

After this incident, the victim returned to live with the defendant. She said she loved the defendant and "like a fool" believed him when he said he would never do it again. On January 3, 1983, the defendant warned the victim not to testify against him and then smashed a thirty-pound ceramic tiger over her head and back. Thereafter, the victim left the defendant permanently.

1. *Evidence of prior beatings.* During the trial, the victim said that in February or March of 1982 she began living with the defendant at his home in Plymouth. Their relationship was characterized by cyclic episodes of violence and reconciliation. The victim said that the defendant had beaten her several times prior to October 19, inflicting injuries, some of which required medical treatment. On those occasions, she did not notify the police or tell the treating physician that the defendant had beaten her. After each episode, she returned to live with the defendant.

Relying on the general rule that the "prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged," see *Commonwealth* v. *Trapp,* 396 Mass. 202, 206 (1985), the defendant asserts "that the admission of evidence of prior beatings was clearly a prejudicial error which requires reversal of the conviction[s]." The defendant's argument ignores the fact that in two separate indictments he was charged with armed assault with

---

[3] The defendant also was convicted of similar offenses which occurred on October 19, 1982, involving the same victim. On appeal, the issues are the same for the convictions resulting from the incidents of October 19 and November 2. Thus, we do not state the details of the October 19, 1982, crimes.

intent to murder.[4] See G. L. c. 265, § 18 (1984 ed.). Thus, the prosecution had to prove beyond a reasonable doubt both malice and a specific intent to murder the victim by assaulting her. *Commonwealth* v. *Burkett*, 396 Mass. 509, 512 (1986). *Commonwealth* v. *Henson*, 394 Mass. 584 (1985). Evidence of the prior beatings and mistreatment of the victim was probative of the defendant's mental state and his intent at the time of the offenses. See *Commonwealth* v. *Gallison*, 383 Mass. 659, 666 (1981). "The evidence was . . . indicative of hostility and actual malice toward the victim." *Commonwealth* v. *Bryant*, 390 Mass. 729, 744 (1984). Because malice is an essential element of armed assault with intent to murder, there was no error in admitting evidence of the prior beatings. See *Commonwealth* v. *Little,* 376 Mass. 233, 238 (1978). See generally P.J. Liacos, Massachusetts Evidence 420-423 (5th ed. 1981 & Supp. 1985).

The defendant claims that the prior beatings occurred five to seven months before the events of October 19 and November 2, and thus were too remote. The question whether the evidence was too remote in time is "within the sound discretion of the trial judge, and there is nothing to indicate an abuse of discretion in this regard." *Commonwealth* v. *Baldassini,* 357 Mass. 670, 679 (1970).

2. *Evidence of the assault on the victim's dog.* The defendant next argues that the judge abused her discretion in not excluding

---

[4] The defendant concedes in his brief that "evidence of prior bad acts by a defendant towards a victim [is admissible] for purposes of proving premeditation or malice aforethought in a first degree murder case." The fact that the jury did not return verdicts of guilty on the indictments on armed assault with intent to murder is not determinative of the admissibility of the evidence.

Similarly, the fact that the Commonwealth offered the evidence on the representation that there would be expert testimony that the victim's conduct toward the defendant was consistent with the "battered woman syndrome" and then did not produce such expert testimony does not affect admissibility of the evidence. The record does not reflect, nor does the defendant suggest, that there was any bad faith on the part of the prosecutor in stating that he expected to introduce such evidence. The judge did not admit the evidence of prior beatings subject to expert testimony on the "battered woman syndrome."

the evidence of the assault on the victim's dog.[5] He contends that this evidence was irrelevant because it did not relate to any charges pending against him. He argues that the jury could not make any permissible inference of a particular mens rea against the victim from his activities toward a dog. We do not agree.

The evidence indicates that there were other dogs at the house but the defendant abused only the victim's dog. There was evidence from which the jurors could infer that the victim loved the dog and that the defendant's conduct toward that dog in particular was an expression of his hostility toward her.

The defendant also argues that even if this evidence is relevant, its inherently inflammatory character necessarily outweighs any probative value.[6] In light of the evidence of the conduct of the defendant toward the victim, we do not see how the description of the assault on the dog would inflame the jury's passions more than the description of the assault on the victim. We conclude that there is no substantial likelihood of a miscarriage of justice.

*Judgments affirmed.*

---

[5] Defense counsel did not object to this evidence at trial, although he subsequently moved for a mistrial. Thus, this issue was not properly preserved for appeal. See *Commonwealth* v. *Baptiste,* 372 Mass. 700, 706 (1977). We review the record only to determine if a substantial risk of a miscarriage of justice has been created. See *Commonwealth* v. *McGahee,* 393 Mass. 743, 749 (1985).

[6] As an indication that the testimony was inflammatory, the defendant points out that the foreman of the jury asked to be excused after he heard the testimony relating to the assault on the dog, stating that he could no longer remain impartial. The judge excused both the foreman and another juror with whom the foreman had shared his reaction.