COMMONWEALTH *vs.* VINCENT ROBERTSON.

Plymouth. November 7, 1990. - December 4, 1990.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Malice. Practice, Criminal*, Indictment, Mistrial, Instructions to jury. *Evidence*, Prior misconduct, Photograph, Identity.

The proof at a murder trial did not impermissibly deviate from the indictments. [749]

At a murder trial evidence of the defendant's prior bad acts was properly admissible for purposes other than to show the defendant's character. [749-752]

The judge at a murder trial properly admitted in evidence a certain photograph of one of the victims. [752]

At a murder trial the judge properly denied the defendant's motions for mistrial made as a result of unresponsive testimony from prosecution witnesses, where the judge's prompt instructions to the jury to disregard the evidence were sufficient to cure any prejudice. [752-753]

There was no error at a murder trial in the judge's instructions to the jury on the burden of proof. [753-754]

Evidence at the trial of two first degree murder indictments was sufficient to warrant the jury's determination that the defendant was the person who killed the victims, with malice aforethought and deliberate premeditation. [754-757]

INDICTMENTS found and returned in the Superior Court Department on May 20, 1986.

The cases were tried before *William H. Carey*, J.

*Willie J. Davis* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

NOLAN, J. The defendant, Vincent Robertson, was convicted of murder in the first degree in connection with the deaths of Mary Ross and Valentina Giovanniello. Robertson now appeals, arguing, among other things, that the judge

erred in denying his motion for a required finding of not guilty and by improperly admitting evidence of his prior misconduct which tended to portray him as a bad person. We hold that there was no error and accordingly affirm the judgments of the Superior Court.

At approximately 2 A.M. on May 10, 1983, police officers discovered the bodies of Mary Ross and Valentina Giovanniello at 5 Royal Road in Brockton. Mary Ross was face down on the living room floor in front of a couch with a single bullet in her head. Valentina Giovanniello was on her back in the same room with a bullet wound through her left arm and another in her back.

The medical examiner testified that the time of death for both victims was probably 2 A.M. on May 9, but no later than 9 A.M. that day. The victims were both killed by a weapon capable of firing .25 caliber automatic ammunition. A box of .25 caliber automatic ammunition with several rounds missing was discovered on the fireplace mantel in the living room. Police recovered several live cartridges from the floor in front of the mantel. The murder weapon was never found. Several witnesses testified that on prior occasions they had seen the defendant brandishing a gun which was consistent in appearance with the murder weapon.

Mary Ross resided at 5 Royal Road with her child, of whom the defendant was apparently the father. Valentina Giovanniello lived at a nearby apartment. It appears that Robertson spent time at both residences and received mail at each. There was evidence to the effect that the victims were prostitutes and Robertson was their pimp. There was also testimony indicating that Robertson had severely beaten each victim at different times several months prior to the murders.

On May 8, 1983, Robertson hosted a cookout at the 5 Royal Road house. Following the party, many of the guests went to a local bar. After arranging for the child to be taken care of by the daughter of a friend, Robertson and the two victims also went to the bar. Robertson drove his blue Cadillac automobile and the victims took their yellow Honda automobile. The victims later left that bar and went with the de-

fendant in his Cadillac to another. The Honda was recovered from the parking lot of the first bar after the murders. Robertson was seen arguing with the victims, and one witness testified that she saw Robertson grab one of the victims by the hair. The three were asked to leave the second bar at around 12:30 A.M. No one testified to having seen the victims after that time. The defendant's Cadillac was found parked in the driveway at 5 Royal Road.

Sometime on May 9, the defendant retrieved his child from the babysitter and fled to parts unknown. A few days later, Robertson spoke to a friend from a public telephone. The friend handed the phone to a police officer whom Robertson knew. The officer suggested that Robertson had "fucked up." Robertson replied with a "mumbled response." The officer then made arrangements with Robertson to secure the child so that the child would not be hurt during the "nationwide search" for Robertson which would ensue. Robertson did not question why there might be such a manhunt, but made arrangements to turn over the child.

More than two years later, in December of 1985, Robertson was apprehended in Virginia. He gave the arresting officers two different aliases. He was tried by a jury and convicted on indictments charging murder in the first degree.

1. *The indictments.* Robertson first claims that his convictions cannot stand because the proof at trial did not match the indictments. Both indictments were in the form prescribed by G. L. c. 277, § 79 (1988 ed.), stating that Robertson "by . . . assault and beating did kill and murder" the victims. Robertson claims that, because the crimes described at trial did not involve a beating, he was deprived of a fair trial. The statutory form of indictment is constitutionally sufficient to charge murder by whatever means it may have been committed. *Commonwealth* v. *Jordan,* 207 Mass. 259, 266-267 (1911). *Commonwealth* v. *Jones,* 16 Mass. App. Ct. 931 (1983). Therefore the proof at trial did not impermissibly deviate from the indictments.

2. *Prior bad acts.* The prosecution presented evidence that Robertson was a pimp and the victims had worked for him as

prostitutes, that Robertson had, some months before the murders, severely beaten each of the victims on different occasions, and that Robertson on several occasions was seen with a handgun. Robertson claims that this evidence was improper character evidence and, therefore, was inadmissible.

Evidence of prior bad acts is not admissible to show that the defendant has a criminal propensity or is of bad character. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372 (1978). However, "[r]elevant evidence is not rendered inadmissible merely because it indicates that the defendant may have committed an offense other than that for which he is being tried." *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981). All of the challenged evidence is admissible for a purpose other than impugning the defendant's character and is therefore admissible, so long as its probative value is not substantially outweighed by any prejudice. This latter determination is for the judge to make and we shall not disturb it on appeal "except for palpable error." *Id.* at 463.

The evidence that Robertson had, on prior occasions, possessed a handgun was admissible for purposes other than showing the defendant in a poor light. The victims were killed by a weapon capable of firing .25 caliber automatic ammunition. Several witnesses testified that they saw Robertson with a gun consistent in appearance with that type of weapon. The murder weapon was never found. The testimony concerning the gun lent credence to the idea that Robertson possessed the means to commit the murders and thus was relevant. The judge properly instructed the jury on the use they could make of such evidence.

Robertson also objects to evidence tending to show that the victims were prostitutes in his employ. This too was admissible for a purpose other than showing that the defendant was a bad person. In *Commonwealth* v. *Young*, *supra* at 463, we stated that "[i]t is well for the jury to have a view of the entire relationship between the defendant and . . . the alleged victims." That proposition is equally valid in this case. The relationship between the defendant and the two victims was

complex, and the jury were entitled to evidence describing the whole relationship. "Without the challenged evidence the killing could have appeared to the jury as an inexplicable act of violence." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). The judge did not abuse his discretion by allowing the jury to hear this evidence.

Finally, Robertson objects to the introduction of evidence tending to show that he had beaten the victims some months prior to the murders. We have long recognized that "[e]vidence of a hostile relationship between a defendant and his spouse may be admitted as relevant to the defendant's motive to kill the victim spouse." *Commonwealth* v. *Gil*, 393 Mass. 204, 215 (1984). Even though the defendant's relationship to the victims in this case was not spousal, the evidence of prior physical violence and hostility was nevertheless relevant to whether Robertson might have a reason to kill the victims.

In *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489 (1986), the defendant was charged with assault and battery with intent to murder his girl friend. Evidence of prior beatings was held admissible as being "probative of the defendant's mental state and his intent at the time of the offenses. . . . 'The evidence was . . . indicative of hostility and actual malice toward the victim.' " (Citations omitted.) *Id.* at 492. Moreover, evidence of the prior beatings was admissible because "it tended to show the defendant's state of mind toward [the victims], namely hostility, which could be found to have continued up to the time of [the victims'] death." *Commonwealth* v. *Little*, 376 Mass. 233, 238 (1978). See *Commonwealth* v. *Bartolini*, 299 Mass. 503, 510-511, cert. denied, 304 U.S. 565 (1938).

The evidence of prior violence by the defendant toward the victims also further demonstrated to the jury the full nature of the relationship between the defendant and the victims. The fact that Robertson had severely beaten the victims in the past, coupled with evidence of their relationship and the fact that they had been seen arguing earlier that evening

could have shown the jury that Robertson had reason to kill the victims.

Robertson contends that, even if the evidence was admissible, some of it was too remote in time from the murders, and there was simply too much of it. Both of these matters are within the sound discretion of the judge and we find no indication that the judge abused his discretion in this regard. See *Commonwealth* v. *Jordan (No. 1), supra.*

3. *The photograph.* Robertson next argues that the judge erred when he admitted in evidence a certain photograph of one of the victims. The photograph shows Mary Ross shortly after she had allegedly been beaten by the defendant. Robertson contends that the photograph should have been excluded because it was highly prejudicial and had little probative value because other evidence already demonstrated that the beating occurred and that it was severe.

The law on the admissibility of photographs is clear. "[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Gallagher, ante* 510, 519 (1990), quoting *Commonwealth* v. *Ramos,* 406 Mass. 397, 407 (1990). As discussed above, the prior beatings were proper subjects of evidence. The photograph supported other evidence which showed the nature and extent of the beating. The admission of the photograph was not an abuse of the judge's discretion.

4. *Motions for mistrial.* On three occasions during the trial, excludable evidence came before the jury as a result of unresponsive testimony from prosecution witnesses. The first such occasion occurred when the witness related a statement she had made to one of the victims to the effect that the victim should leave the defendant, because "[n]ext time he's going to end up killing you." The second incident involved a witness commenting on the mental state of one victim prior to the murder. The final occasion occurred when a witness quoted the defendant as saying to one victim, "you know,

Val, I'll kill her too."[1] On each occasion, the defendant moved for a mistrial and on each occasion the judge opted instead to instruct the jury to disregard the excludable evidence. Robertson now claims that the judge committed reversible error by not declaring a mistrial. We do not agree.

Generally, "[t]he decision whether to declare a mistrial is within the judge's discretion." *Commonwealth* v. *Maldonado*, 389 Mass. 626, 629 (1983). Only if the judge abuses that discretion shall we reverse such a decision. In each of the three instances, the judge was warranted in denying the motion for a mistrial and handling the matter by jury instruction. *Commonwealth* v. *Toro*, 395 Mass. 354, 359 (1985). "The judge's striking the testimony and promptly instructing the jury to disregard it were sufficient to cure any possible prejudice." *Commonwealth* v. *Maldonado, supra.*

5. *Instructions on the burden of proof.* Robertson next claims that the judge impermissibly lowered the burden of proof when he instructed the jury as to inference. Having reviewed the judge's charge, the relevant portion of which is set forth in the margin,[2] we find no merit in this contention.

---

[1] The judge excluded this statement because it was unresponsive to the prosecutor's question, but stated to counsel that it might be admissible as a threat by the defendant. We express no opinion as to the admissibility of the statement, but hold only that it did not necessitate a mistrial.

[2] "For the Commonwealth to prove its case solely on circumstantial evidence, the circumstances must be such as to produce a moral certainty of guilt and to exclude any other reasonable theory of guilt. Circumstantial evidence, however, is of no less value than direct evidence if you are satisfied of its consequences beyond a reasonable doubt. In a circumstantial evidence case, it is not necessary for the prosecution to show that it was not in the power of any other person than the defendant to commit the crime, not to exclude every other hypothesis of guilt, but any inferences drawn from circumstantial evidence must be reasonable and exclude any other reasonable theory of guilt.

"When the Commonwealth relies solely upon circumstantial evidence to sustain its burden, all of the facts must be proved consistent with each other and with the main facts sought to be proved. You are not permitted to find the defendant guilty of the crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crimes, but cannot be reconciled with any other reasonable theory. If the evidence is susceptible of two reasonable interpretations, one of which points to the guilt

The judge repeatedly emphasized to the jury that they must find each element beyond a reasonable doubt. The charge regarding inferences did nothing to detract from that burden. There was no error in the charge.

6. *Sufficiency of the evidence.* In order for the Commonwealth to prevail in a criminal case, it must prove each element of the crime charged beyond a reasonable doubt. *Jackson* v. *Virginia,* 443 U.S. 307 (1979). "[I]f all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force

---

of the defendant and the other to his innocence, it is your duty to adopt the interpretation which points to the defendant's innocence and reject the other which points to his guilt.

"If any one fact necessary to the conclusion is wholly inconsistent with the hypothesis of the guilt of the defendant, it breaks the chain of circumstantial evidence upon which the inference depends and however plausible or apparently conclusive the other evidence may be, the charge must fail. It is not sufficient to establish a probability though a strong one arising from the doctrine of chance that the fact [charged] is more likely to have been proven than the contrary, the law does reject probability. The fact must be established beyond a reasonable doubt by circumstantial evidence and if there is an inference to be drawn from that circumstantial evidence, that inference must satisfy you beyond a reasonable doubt. So that members of the jury, you can use to that extent circumstantial evidence and inferences that you care to draw from circumstantial evidence and, so, you might ask of me, well, what is an inference that is to be drawn from evidence? .

"An inference really is the application of common sense. An inference is a permissible deduction from evidence that you accept, reject or accord such probative value as you desire. When a material fact is not proven by direct testimony, but is left to be inferred from other facts or direct evidence, you are at liberty to use your general knowledge in determining what inferences are reasonably drawn from the other facts that you believe and such inferences may be considered by you with all of the other evidence in the case in reaching a verdict.

"In a criminal case any inference that is adverse to the defendant, you may not draw an inference unless you are persuaded to its truth beyond a reasonable doubt. It need not be a necessary inference, only one that is reasonable and possible. There are many circumstances in human life and in human trials that [require] the use of inferences. What a person's knowledge is or what a person's intent is, is usually a matter of inference. We cannot get into a person's mind and to know directly what he knows or what he's thinking or what his or her intent is, but you infer that from a combination of other circumstances which you believe. A relationship with a party is sometimes the subject matter of inference."

to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt," then there is sufficient evidence to support a guilty verdict. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979), quoting *Commonwealth* v. *Clark*, 378 Mass. 392, 403-404 (1979). Each element of the crime must be supported by such evidence. *Commonwealth* v. *Latimore, supra.*

Robertson was convicted of murdering Mary Ross and Valentina Giovanniello. Both convictions were convictions of murder in the first degree. With respect to each victim, therefore, the Commonwealth was required to prove beyond a reasonable doubt that (1) Robertson was the person who killed the victim; (2) the killer possessed malice aforethought, and (3) the killing was either premeditated, extremely cruel or atrocious, or committed during a felony.

The Commonwealth relied solely on circumstantial evidence at trial. This, by itself, does not indicate that the evidence against Robertson was insufficient. "A web of convincing proof can be made up of inferences that are probable, not necessary." *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). Moreover, " '[i]n cases in which [t]he evidence [is] largely circumstantial . . . it is not essential that the inferences drawn should be only necessary inferences. . . . It is enough that [the inferences] be reasonable and possible.' . . . 'To the extent that conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." ' " (Citations omitted.) *Brown* v. *Commonwealth*, 407 Mass. 84, 89 (1990). We review the evidence for each essential element of the crime of murder in the first degree in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore, supra* at 676-677.

a. *Identity.* There was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant was the individual who killed the two victims. The Commonwealth presented evidence to the effect that the defendant had acted violently toward each of the victims in the past, that they had been arguing earlier that night, and that Robertson had grabbed one of the victims by the hair that eve-

ning. From this evidence the jury could have inferred that Robertson was angry with the victims and intended to do them harm. The victims were last seen leaving a bar with Robertson in his car. That car was found at the murder scene. The murders took place in a house which the defendant shared with one of the victims. There was no evidence of a robbery. Robertson was linked to a weapon which could have been the murder weapon.

In sum, there was evidence that Robertson had reason to kill the victims, had the means and opportunity to do so, and demonstrated a consciousness of guilt. "The Commonwealth need not prove that no one else could have committed the murder." *Id.* In this instance, the jury were warranted in finding beyond a reasonable doubt that Robertson was the person who killed the two victims.

b. *Malice aforethought.* The use of a deadly weapon, such as the gun used here, generally supports a finding of malice aforethought. See *Commonwealth* v. *Jones,* 366 Mass. 805, 809 (1975). There is evidence of malice, therefore, with respect to each of the murders.

c. *Murder in the first degree.* In order to support a conviction of murder in the first degree, the evidence must show that the murder occurred during the commission or attempted commission of a felony, see *Commonwealth* v. *Horton,* 376 Mass. 380 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts,* 440 U.S. 923 (1979), that the murder was accomplished through extreme atrocity or cruelty, see *Commonwealth* v. *Podlaski,* 377 Mass. 339 (1979), or that the defendant killed the victim with deliberate, premeditated malice aforethought, see *Commonwealth* v. *Storey,* 378 Mass. 312 (1979), cert. denied, 446 U.S. 955 (1980). There was no evidence of extreme atrocity or cruelty or the commission of another felony. If the convictions are to stand, therefore, there must be evidence sufficient to support a finding of deliberate premeditation.

"To prove deliberate premeditation, the Commonwealth has to show that the defendant reflected upon his resolution to kill." *Commonwealth* v. *Dalton* 385 Mass. 190, 196

(1982). "Deliberate premeditation would have been present even if the killing followed reflection by only a few seconds." *Commonwealth* v. *Basch*, 386 Mass. 620, 622 (1982).

The use of a deadly weapon, and the placement of the bullet wounds, support the jury's finding of deliberate premeditation. The jury would have been justified in inferring that the murderer loaded the weapon before the killings, shot Mary Ross in the head as she sat on the couch, then shot Valentina Giovanniello twice as she scrambled to avoid him. Such circumstances clearly warranted a finding of deliberate premeditation.

7. *Review under G. L. c. 278, § 33E.* Pursuant to our obligations under G. L. c. 278, § 33E (1988 ed.), we have reviewed the entire record. We have discovered no reason to conclude that there was error or that either conviction should be reduced to murder in the second degree. See *Commonwealth* v. *Paradise*, 405 Mass. 141, 157 (1989).

*Judgments affirmed.*