## COMMONWEALTH *vs.* NANCY M. McGEOGHEAN.

Middlesex. March 5, 1992. - June 10, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence*, Prior misconduct, Relevancy and materiality, State of mind, Prior conviction. *Homicide. Malice. Practice, Criminal*, Instructions to jury, Argument by prosecutor, Mistrial, Unsworn statement by defendant, Capital case.

At the trial of a defendant for murder in the death of her twenty-three month old daughter, the trial judge did not abuse her discretion in admitting evidence, bearing only on the defendant's state of mind and intent, that tended to show that between six weeks and four months before her daughter's death, the defendant inflicted cigarette burns on the daughter's chest [841-842] and, where the defendant told the police during their investigation that she did not know about the scars, the prosecutor was entitled, in the course of his closing argument, to refer to the defendant's failure to provide an explanation of the scars, and, in so doing, was not, in the circumstances, improperly commenting on the defendant's failure to testify at trial or unfairly overstating the significance of the scars. [842]

At a murder trial, the judge did not, in the circumstances, err in permitting the prosecution to rehabilitate one of its witnesses with respect to impeachment evidence showing his convictions of various crimes. [842-843]

At a murder trial, there was no prejudicial error in the judge's limiting instruction to the jury to disregard the statement of the defendant's former husband who testified, without warning, that the defendant had refused to take a polygraph test; nor did the judge abuse her discretion in denying the defendant's request to make an unsworn statement to the jury. [843]

After review of the record of a murder trial, no reason appeared for this court's exercise of its power under G. L. c. 278, § 33E, either to grant a new trial or to reduce the defendant's conviction of murder in the first degree to a lesser degree. [843-844]

INDICTMENT found and returned in the Superior Court Department on January 6, 1989.

The case was tried before *Patti B. Saris*, J.

*Charles K. Stephenson* (*John H. Cunha, Jr.*, with him) for the defendant.

*Barbara F. Berenson*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. Early in the morning of August 15, 1988, the defendant's twenty-three month old daughter Sarah died of asphyxia due to compression of her neck. Sarah had been strangled by a stereo speaker cord and smothered by a hand or pillow. The jury were warranted in finding that the defendant killed Sarah with deliberate premeditation and malice aforethought. We consider the defendant's appeal from her conviction óf murder in the first degree.

The defendant has raised four substantive challenges to her conviction. Only two require more than a brief discussion. We affirm the conviction and decline to provide relief in the exercise of our obligations under G. L. c. 278, § 33E (1990 ed.).

To provide the basis for understanding the issues, we need present only a general description of the circumstances affecting the defendant at the time of Sarah's death. Terence McGeoghean, the defendant's husband and Sarah's father, was incarcerated in the Billerica house of correction for a firearms violation and, at the time of Sarah's death, was about to finish serving his sentence. In early July, 1988, one Wayne Bachelder met the defendant and shortly thereafter began having sexual relations with her regularly. Sarah had a good relationship with Bachelder and called him "Da Da." The Commonwealth's evidence suggested that the defendant killed Sarah to prevent Sarah from telling her father about her mother's association with Bachelder. On the night of August 13, Bachelder stayed at the defendant's residence in Cambridge for the first time. He slept upstairs. The defendant and Sarah slept downstairs in the living room. That pattern continued the next night. At 5:30 A.M. on Monday, August 15, the defendant called Terence's parents to report that

Sarah was not breathing and to obtain their aid. City rescue personnel took Sarah to Mount Auburn Hospital where she was pronounced dead.

1. The trial judge did not abuse her discretion in admitting evidence, bearing only on the defendant's state of mind and intent, that tended to show that between six weeks and four months before her daughter's death, the defendant inflicted cigarette burns on Sarah's chest.

There was medical testimony that circular scars on the victim's chest were probably caused by cigarette burns and that other possible causes of the scars were not likely in the circumstances. There was also evidence that the defendant was Sarah's principal caretaker, that the burns would have been painful and noticeable, and that the defendant denied to the police that she had noticed the scars on her daughter's body or knew their cause.

The admissibility of this evidence of prior bad acts lies in large measure in the discretion of the trial judge. In deciding on the propriety of the admission of relevant evidence of a defendant's prior bad acts, we have accepted a judge's balancing of the probative value of the evidence against its prejudicial effect on the jury, in the absence of palpable error. See *Commonwealth* v. *Scott*, 408 Mass. 811, 819 (1990); *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), *S.C.*, *ante* 172 (1992); *Commonwealth* v. *Shraiar*, 397 Mass. 16, 26 (1986).

The evidence was probative of the defendant's state of mind toward her daughter and was relevant to her intent at the time Sarah was killed, issues that bore at least on the existence of malice. See *Commonwealth* v. *Robertson*, 408 Mass. 747, 751 (1990); *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489, 491-492 (1986). The cigarette burns were not too remote in time. See *Commonwealth* v. *Jordan (No. 1)*, *supra* at 492 (five to seven months); *Commonwealth* v. *Little*, 376 Mass. 233, 238 (1978) (two years). Nor does the fact that the burns may have been inflicted in only a single incident bar the admission of evidence of the scars. *Commonwealth* v. *Little, supra.*

The judge limited the jury's use of this evidence by explaining that, "[i]f you find that the defendant caused the prior injury, then you may consider this evidence on the issue of [the defendant's] state of mind and intent on the morning of August 15, 1988." Such an instruction tends to offset any improper prejudicial effect of evidence that might be thought to show the defendant's bad character or propensity for violent acts and focuses the jury's attention on the proper application of the evidence. See *Commonwealth* v. *Robertson, supra* at 750; *Commonwealth* v. *Harvey,* 397 Mass. 803, 810 (1986).

The defendant objects to portions of the prosecution's closing argument concerning the evidence of Sarah's scars. When the police questioned her about the scars on her daughter's chest, the defendant told the police that she did not know about them. The prosecutor was thus entitled, in the course of his jury argument, to refer to the defendant's failure to provide an explanation of the scars, and, in doing so, he was not improperly commenting on the defendant's failure to testify at trial. The judge, moreover, instructed the jury, at the defendant's request, that they should draw no unfavorable inference from the fact that she did not testify. We also reject the defendant's argument that the prosecution unfairly overstated the significance of the scars. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 378 (1978).

2. In the special circumstances, the judge did not err in permitting the prosecution to rehabilitate its witness Wayne Bachelder with respect to impeachment evidence showing his convictions of various crimes. We have already stated that Bachelder was the only person other than the defendant and the victim who had spent the night at the home where the murder occurred. In various ways, the defense pointed to Bachelder as one who might have committed the crime.

In the course of Bachelder's cross-examination, the defendant's counsel sought to impeach him with the fact of various criminal convictions, two of which were convictions for threatening to assault his own son and his former wife. Defense counsel explored the circumstances of those crimes and

Bachelder's relationship with his son and former wife. On re-direct examination, the prosecution, over objection, asked Bachelder questions about his family relationships and, without objection, established that numerous complaints had been disposed of in groups on specific days.

The general rule is that, when a record of a witness's conviction of a crime has been introduced to impeach him, the conviction must be left unexplained. See *Commonwealth* v. *Maguire*, 392 Mass. 466, 471 n.10 (1984); *Lamoureux* v. *New York, N.H. & H.R.R.*, 169 Mass. 338, 340 (1897). The guilt or innocence of the witness cannot be revisited, and the jury should not be distracted by the collateral matter of the witness's prior crimes. *Lamoureux* v. *New York, N.H. & H.R.R.*, *supra* at 340. The proponent of the witness, then, generally "is not entitled to present on redirect examination the circumstances of prior convictions by which its witness is impeached." *Commonwealth* v. *Rosado*, 408 Mass. 561, 570 (1990). See *Commonwealth* v. *Maguire*, *supra*. When, however, as in this case, cross-examination goes beyond simply establishing that the witness is the person named in the record of conviction, the proponent of the witness may, in the judge's discretion, properly inquire on redirect examination about those collateral matters raised during the cross-examination. See *Commonwealth* v. *Callahan*, 358 Mass. 808 (1970); *Lamoureux* v. *New York, N.H. & H. R.R.*, *supra.*

3. The defendant's two remaining substantive contentions require only brief discussion. (a) The judge promptly delivered a forceful instruction to the jury to disregard the statement of the defendant's former husband who testified, without warning, that the defendant had refused to take a lie detector test. A mistrial was not required. See *Commonwealth* v. *Robertson*, 408 Mass. 747, 752-753 (1990). We see no prejudicial error in the judge's limiting instruction. (b) The judge did not abuse her discretion in denying the defendant's request to make an unsworn statement to the jury. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 96 (1973).

4. The defendant is not entitled to relief under G. L. c. 278, § 33E. We have found no basis for the granting of a

new trial. Nor is there reason to direct a reduction in the verdict of murder in the first degree. The trial judge declined to reduce the verdict under Mass. R. Crim. P. 25 (b) (2), as amended, 389 Mass. 1107 (1983), and filed a thorough memorandum in explanation of her conclusion.

The defendant had a troubled youth, became a teenage mother, was estranged from her family, and encountered marital problems when her husband was incarcerated. She had no prior criminal record. There was some inconclusive evidence that she may have been intoxicated on the night of her daughter's death. On the other hand, a defenseless child was strangled with a stereo extension cord for several minutes, and then her face was smothered with a pillow. The evidence strongly supports the conclusion that whoever strangled the child to death did so with deliberate premeditation. See *Commonwealth* v. *Lake*, 410 Mass. 47, 52 (1991). We should not second-guess the jury's finding that the defendant is the person who committed this crime. The fact that the Commonwealth offered to accept a plea of guilty to manslaughter is not a relevant consideration in our § 33E review of a conviction. See *Commonwealth* v. *King*, 391 Mass. 691, 695-696 (1984).

*Judgment affirmed.*