## Commonwealth vs. Alana Gaulin.

No. 07-P-1709.

Worcester. September 10, 2008. - August 25, 2009.

Present: McHugh, Mills, & Wolohojian, JJ.

*Robbery. Assault and Battery. Practice, Criminal,* Disclosure of evidence. *Evidence,* Disclosure of evidence, Prior misconduct, Relevancy and materiality, Motive.

A criminal defendant alleging prejudice arising from the prosecution's delayed disclosure of certain evidence failed to point to any error in the way the trial judge handled the issue. [78]

At the trial of indictments charging unarmed robbery of a person aged sixty or older and assault and battery, the judge's admission in evidence of other bad acts of the defendant (specifically, evidence suggesting to the jury that the defendant had placed other neighbors in fear by repeatedly asking them for money) neither infected the case with prejudicial error nor created a substantial risk of a miscarriage of justice, where the evidence was relevant to the defendant's motive and was sufficiently close in time to the charged incident to be relevant, and where the judge carefully balanced the probative value against the likelihood of unfair prejudice, trimmed the Commonwealth's proposed evidence accordingly, and surrounded the testimony with forceful limiting instructions. [78-79]

INDICTMENTS found and returned in the Superior Court Department on April 13, 2005.

The cases were tried before *Peter W. Agnes, Jr.,* J.

*Ellen A. Jawitz* for the defendant.

*Donna-Marie Haran,* Assistant District Attorney, for the Commonwealth.

McHugh, J. A jury found Alana Gaulin, the defendant, guilty of unarmed robbery of a person aged sixty or older, G. L. c. 265, § 19(*a*), and assault and battery, G. L. c. 265, § 13A. On appeal, she challenges the prosecution's delayed disclosure regarding the whereabouts of a relative of the victim and the admission of evidence of other bad acts, specifically evidence she

characterizes as a suggestion to the jury that she had placed other neighbors in fear by repeatedly asking them for money. We affirm.

Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the evidence at trial showed that on October 4, 2004, the defendant visited the home of Phyllis Knuuttila, her seventy-eight year old neighbor, asking to borrow $160. Knuuttila, who was familiar with the defendant and who had in her wallet the $862 proceeds of her recently cashed Social Security check, gave the defendant the money she requested in order "to get rid of her."

Later that evening, the defendant returned, this time seeking a drink of water. Knuuttila invited her into the kitchen and gave her a glass of water. While drinking the water, the defendant asked for five dollars so she could buy some cigarettes. Initially, Knuuttila refused but then, changing her mind, went into her bedroom to get five dollars from her wallet. The defendant followed her into the bedroom and stated, "If you don't give me the five dollars, I'll take it." At that point, according to Knuuttila, the defendant tried to grab the wallet and, after a struggle, wrested it from Knuuttila's control. The defendant then removed all but $100,[1] threw the wallet back on the bed, and walked out, saying as she left, "Now you can call the cops."

As soon as the defendant left, Knuuttila did "call the cops." Officer Michael Chandler responded. Knuuttila told him that she knew the perpetrator, whom she identified by name as "Alana Gaulin," because she had given her money and a ride to a doctor's appointment on prior occasions. Officer Chandler did not obtain any fingerprints from the wallet or from the water glass from which the defendant had drunk. He did, however, speak with Knuuttila's grandson, Alex, who told him that he had been at the house earlier that day to borrow laundry detergent. Later, Knuuttila identified the defendant from a photo array, which is not challenged here. Subsequently, the defendant was arrested, tried, and convicted.

---

[1]Knuuttila testified that she cashed the $852 check on October 2 and had not spent any of the money prior to October 4. After the incident, she filed an insurance claim for $700. As she claimed to have voluntarily given the defendant $160, and $100 remained in her wallet, police determined that the defendant had taken $592.

Two components of the trial provide the basis for the defendant's appeal. The first has to do with a late disclosure of Alex's whereabouts. In her opening statement, counsel for the defense, after painting a picture of Knuuttila as an elderly, confused person, said as follows:

> "When Knuuttila called the police that evening, she was alone. But while the police were there speaking with her, her grandson came home and spoke briefly with the police, acknowledged that he had been there earlier in the day and left, and then he was gone. He moved out either that day, or the next day, and Knuuttila has not heard from her grandson since that time."

The remainder of her opening described a slipshod police investigation in which investigators had not interviewed Alex, had not obtained fingerprints from the wallet, and had not obtained them from the water glass.

Immediately after the opening, the prosecutor disclosed at sidebar that Alex was living with Knuuttila and was available for testimony. He further stated that police had spoken to Alex during the course of the investigation, and, in view of counsel's statement to the jury that they had not, he was planning to add Alex to his witness list. Defense counsel objected, saying that she had been trying to learn the whereabouts of Alex, as the prosecutor well knew, and that the prosecutor should have told her where Alex was before she made an untrue statement in her opening.[2]

A three-way discussion ensued, during the course of which the judge opined that the "professional" course would have been for the prosecutor to have told defense counsel of Alex's whereabouts before the opening. Then the discussion turned to remedies. Ultimately, defense counsel proposed a solution. She would call her investigator, who would testify that Knuuttila told him she had not seen or spoken to Alex during the year following the

---

[2]Counsel said nothing about her statement that police had never interviewed Alex. Information that police had in fact spoken to Alex during the investigation was in a police report the Commonwealth had provided to the defense, so counsel's apparent misstatement in that regard was not attributable to any disclosure delay.

robbery. Indeed, counsel stated, if Knuuttila agreed on cross-examination that she had not seen or heard from Alex during the ensuing year, "that would be fine." In response, the judge instructed the Commonwealth to "stay away from" questions about Alex during direct examination of Knuuttila so that he could "see how the cross-examination plays out." "[T]hen," he said, "I'll talk to you both to see what remedial steps, if any, I should take."

In accordance with the judge's instruction, the subject of Alex did not arise during Knuuttilla's direct examination. As cross-examination proceeded, defense counsel's strategy emerged. At a probable cause hearing about three months after the robbery, Knuuttila had testified that Alex had been living in a second bedroom in her house at the time of the robbery and for about six months before it. Through her cross-examination at trial, defense counsel sought to suggest to the jury that Alex's immediate post-robbery disappearance evinced consciousness of guilt on his part, thus requiring the jury to consider whether Knuuttila was confused and that Alex, not her client, was the real robber.

That strategy was tattered to some extent when, during the course of the cross-examination, Knuuttila disavowed her probable cause testimony and told the jury that Alex had not been living with her at the time of the robbery or immediately before, though he had lived with her episodically during earlier periods. Knuuttila persisted in her disavowal even when counsel confronted her with her prior testimony. Nevertheless, counsel did call her investigator, who testified that he had spoken to Knuuttila about one year after the robbery and she told him of her lack of contact with Alex during the preceding year. In her summation, counsel invited the jury's attention to the suspicious nature of Alex's year-long disappearance.

The second component of the trial that gives rise to the appeal has to do with testimony from Angela Arsenault and her husband James, neighbors of Knuuttila from whom the defendant also sought and received money. The Commonwealth called the Arsenaults to testify about the circumstances surrounding the defendant's requests for money. Before calling the Arsenaults, however, the Commonwealth filed a motion in limine in which it outlined the testimony it intended to elicit. At the conclusion of a

hearing on the motion, the trial judge ruled that the testimony was relevant to identity and modus operandi but that the Commonwealth should avoid all questions suggesting that either witness had been fearful of the defendant. Later, as the trial began, the judge narrowed his ruling further and limited the Commonwealth to offering testimony regarding only two of the several incidents the Commonwealth wished to explore with the Arsenaults.

In addition to limiting the substance of the Arsenaults' testimony, the judge told the jury, before and during their testimony, that what they said could be used "for the limited purpose of helping you to understand whether . . . the defendant had a motive for committing the crime she is accused of." Continuing, the judge explained that their testimony was "not evidence that you can use to establish [the defendant's] guilt on the crime that she's charged with." Then, without objection, Angela Arsenault testified that approximately one week after the robbery the defendant came to her house on two occasions during the course of a single day to ask for money. On each occasion, her husband gave the defendant the money she requested.

About two weeks later, however, Angela Arsenault was home alone when, late in the afternoon, the defendant came to the door, again asking for money. She refused to give the defendant any money, and when the defendant asked for James, Angela told her that he was not home. The defendant persisted with her requests, and, although she left for a while, she eventually returned, refused to leave, and continuously rang the doorbell. Ultimately, Angela Arsenault telephoned her husband and told him "[y]ou need to get here ASAP, otherwise I will call the police. She just won't go away." There was no objection. When he was later called as a witness, James Arsenault essentially corroborated the testimony his wife had given.

Those two components of the trial, the defendant claims, were unfairly prejudicial. The Commonwealth's delayed disclosure of evidence that Alex had returned to live with Knuuttila caused material prejudice, in the defendant's view, because his return contradicted her counsel's opening statement regarding the "Alex-disappeared-forever" portion of the "Alex-did-it" defense. The defendant contends that the contradiction undermined the rest of

the otherwise plausible defense and her counsel's credibility. Insofar as the testimony of the Arsenaults is concerned, she claims that the probative value of their testimony, if any, was outweighed by the danger of unfair prejudice. On both points, we disagree.

Dealing first with the delayed disclosure,[3] the defendant's argument suffers from the insurmountable problem that she cannot point to any error in the way the trial judge handled the issue, because her attorney asked for nothing by way of remedy for the late disclosure that the trial judge did not provide. As noted, counsel's first request was that the Commonwealth be prohibited from calling Alex as a witness. Although she did not press that request and the judge did not rule on it, Alex in fact never testified. Her next suggestion was that she would have her investigator testify regarding Knuuttila's lack of contact with Alex during the year following the robbery. That is precisely what the investigator did. In sum, counsel never sought an unprovided remedy.

Insofar as the testimony of the Arsenaults is concerned, we review the trial judge's decision to admit evidence of conduct on other occasions, see Mass. G. Evid. § 404(b) (2008-2009), to determine whether there was clear error. See *Commonwealth* v. *Stewart*, 450 Mass. 25, 36 (2007). There was none.

The Commonwealth's theory was that the defendant constantly needed money and was incapable of handling the money she had. Her need for money supplied the motive for her robbery of Knuuttila. Evidence of her persistent demands from the Arsenaults, who, like Knuuttila, were nearby neighbors, is evidence of that need. The defendant's contact with the Arsenaults took place sufficiently close in time to the robbery to make the contact relevant, see, e.g., *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489, 492 (1986); *Commonwealth* v. *Fickling*, 434 Mass. 9, 16 (2001), and, to show motive, "[a] trial judge may, in his discretion, admit evidence of acts committed subsequent to a charged

---

[3]In that regard, we proceed on the assumption that the Commonwealth had an obligation to tell defense counsel of Alex's return. The trial judge said that disclosure would have been the professional course for the prosecutor to have taken, given his knowledge of defense counsel's interest in Alex's whereabouts. At the same time, the record contains no discovery order or agreement, and the defendant makes no argument that disclosure of Alex's then current whereabouts was required by the rules governing discovery in criminal cases. See Mass.R.Crim.P. 14(a)(1)(A), (a)(4), as amended, 444 Mass. 1501 (2005).

offense." *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434 (2001). See *Commonwealth* v. *Mendes*, 441 Mass. 459, 466 (2004) (same). Moreover, before allowing the Commonwealth to introduce that evidence, the trial judge carefully balanced the probative value against the likelihood of unfair prejudice, see Mass. G. Evid. § 403, trimmed the Commonwealth's proposed offering accordingly, and surrounded the testimony with forceful limiting instructions.

We cannot agree with the defendant's contention that the Commonwealth violated the judge's order to refrain from any testimony showing that the Arsenaults feared the defendant when it elicited Angela Arsenault's testimony that, in response to the defendant's persistent demands for money, she telephoned her husband and told him to come home. In context, her testimony conveyed not fear but a feeling that the defendant had become a persistent pest whom she wanted either her husband, successful in his prior dealings with the defendant, or the police to remove. The prosecutor's brief reference to the incident in summation was of the same tone.

Finally, the trial judge properly overruled the defendant's objections to two components of the Arsenaults' testimony, neither of which touched on an area the judge had preliminarily placed out of bounds. One objection concerned a note the Commonwealth introduced, but the note was relevant and properly authenticated. The other concerned the defendant's reference to needing money because she did not have the fare for a taxicab she had just taken and the cab driver was threatening to call the police. That testimony was an admission, see Mass. G. Evid. § 801(d)(2(A), was relevant to show the need for money both immediately and more generally, and was not more prejudicial than probative.

In sum, on this record, neither the delayed disclosure of Alex's whereabouts nor the evidence regarding the defendant's other efforts to obtain money infected the case with prejudicial error or created a substantial risk of a miscarriage of justice. The judgments are therefore affirmed.

*So ordered.*