COMMONWEALTH vs. ANTHONY JORDAN.

No. 99-P-632.

Suffolk. September 25, 2000. - November 1, 2000.

Present: ARMSTRONG, C.J., PERRETTA, & GELINAS, JJ.

*Evidence,* Firearm, Authentication. *Firearms.*

A .32 caliber bullet was sufficiently authenticated as the one surgically removed from the defendant to permit its admission in evidence in order to contradict the defendant's claim that the bullet removed from his chest had been fired from the .22 caliber revolver with possession of which he was charged, and authentication questions went to the weight of the evidence and were properly submitted to the jury. [370-372]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on April 14, 1997.

The case was tried before *Sarah B. Singer,* J.

*Neil V. Golden* for the defendant.

*Dean A. Mazzone,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. On February 12, 1997, around 10 P.M. in response to reports of repeated gunfire, Boston police responded to an address on Fuller Street in Dorchester and found the defendant lying on the ground with a gunshot wound to his chest. His hands were beneath him, under his back. He could not remove them, and when emergency medical technicians rolled him over to put him on a stretcher, they found a .22 caliber revolver under the small of his back, with three spent cartridges and two live cartridges. (One chamber was empty.) When interviewed by police at Boston Medical Center two weeks later, on being told that they were planning to charge him with unlawful possession of a firearm, the defendant gave this version of events on the night of the shooting. He had been accosted by a stranger who had pulled out a gun and demanded the defendant's jewelry and money. The defendant resisted,

grabbing for the assailant's gun. In the ensuing struggle, the defendant was shot but he managed nonetheless to wrest the gun from the assailant. The latter fled, and the defendant fired two shots at him but failed to stop his flight.

The defendant, convicted of unlawful possession of a firearm and unlawful possession of ammunition, appeals, raising one issue: that it was error to admit in evidence a .32 caliber bullet purportedly removed surgically from the defendant's chest, for want of proper authentication. No objection was taken to its admission; the defendant argues, however, that the evidence substantially demolished his story that the bullet removed from his chest had been fired from the .22 caliber revolver with whose possession he was charged, and that, under the standard laid down in *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), its erroneous admission led to a miscarriage of justice.

The authentication claim arises from there having been no medical testimony to the effect that the bullet handed over to Detective Houston by a nurse on the operating floor, and then submitted by him to ballistics, was the bullet that the medical records substantiate was removed from the defendant's chest the day before. The medical record states that the operation was elective surgery to remove a bullet that had lodged in the defendant's chest six months earlier (the operation was on August 29, 1997) and that a bullet described as .38 caliber was retrieved. Detective Houston testified that he received a call to respond to Boston Medical Center, went there, and met on the operating floor with a nurse who turned over to him a bullet that he marked and sent to ballistics for testing. It turned out to be .32 caliber. On defense counsel's objection, the judge struck an answer in which Detective Houston claimed that he knew the bullet came from the defendant, and counsel argued in closing that it was speculation to assume the bullet had come from the defendant's chest in the absence of medical evidence to that effect.

It is clear, therefore, that defense counsel was well aware of the absence of the connecting medical testimony at the trial and that he chose to use the point, not to exclude the bullet, but to raise doubts in the jury's mind as to the connection between it and the defendant. There are plausible reasons why defense counsel might have opted for this course. He could well have envisioned that objecting to the bullet's admission would only have led to the Commonwealth's producing in court a doctor or

nurse who could supply the connection. The trial was in Boston, after all, and Boston Medical Center was just down the street. If withholding the objection was tactical, there was no miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. at 13. The defendant cannot be permitted to use the omission of the medical evidence for tactical advantage at the trial, waiving objection, and then argue it as a basis for reversal on appeal, as if an objection had been made at trial and overruled. See *Commonwealth* v. *McKnight*, 289 Mass. 530, 543-544, cert. denied, 296 U.S. 660 (1935); *Commonwealth* v. *Owens*, 402 Mass. 639, 641 (1988); *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 520 (1995).

Finally, it is by no means clear that, if the defendant had objected and the judge overruled the objection, reversal would be required. The closest case appears to be *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 496 (1966), where the defendant objected to the admission of items of clothing allegedly worn by the victim. These had been obtained by a police officer from the hospital to which the victim had been taken, and there were bullet holes and blood stains that "roughly correspond[ed] to the victim's wounds." *Ibid.* As here, there was no testimony by hospital personnel that the items had been removed by them, or in their presence, from the victim. "This evidence," the court ruled on appeal, "raised a sufficient likelihood that the articles were those worn by [the victim] on the night in question. There was no error in their admission in evidence. 'The lack of positive identification affects not the competency but the weight of the evidence, and the issue of identity was for the consideration of the jury.' " *Ibid.*, quoting from *Commonwealth* v. *Parrotta*, 316 Mass. 307, 313 (1944).

The evidence here raised a sufficient likelihood that the bullet put in evidence was the one lodged in the defendant's chest the night of February 12. The medical records recorded that the purpose of the August 28 operation was to remove that bullet; Detective Houston went to the hospital the next day in response to a message from the hospital that he would be given an object related to that incident; and on that visit he was given the bullet by a nurse on the operating floor, understanding it to be related to the shooting on February 12. The bullet was sufficiently authenticated for admission in evidence, and any lingering ques-

tions went to the weight of the evidence and were properly submitted to the jury.

*Judgment affirmed.*