COMMONWEALTH vs. MICHAEL BUTLER.

No. 03-P-1397.

Suffolk. October 21, 2004. - January 28, 2005.

Present: ARMSTRONG, C.J., GRASSO, & GRAHAM, JJ.

Further appellate review granted, 444 Mass. 1106 (2005).

*Assault and Battery. Idle and Disorderly Person. Evidence,* Prior misconduct, Hostile witness, Impeachment of credibility. *Witness,* Hostile witness, Impeachment. *Practice, Criminal,* Argument by prosecutor.

At the trial of criminal complaints charging the defendant with assault and battery and disorderly conduct, the judge erred in admitting evidence of several bad acts that the defendant allegedly committed against the complainant, and the error was prejudicial with regard to the assault and battery charge, where the prior bad acts were not relevant to any issue in the trial and were offered merely to show the defendant's propensity to commit the crime; however, the admission of such evidence was not prejudicial with regard to the disorderly conduct charge, where there was percipient witness evidence that warranted the conviction. [842-847]

At a criminal trial, the Commonwealth did not improperly call the complaining witness to testify for the sole purpose of impeaching her recantation of her accusations against the defendant, where the complaining witness supplied a significant piece of testimony, namely, that the defendant had been her boyfriend for the past seven years. [847-848]

At a criminal trial, the prosecutor did not vouch for the credibility of her witnesses in her opening statement or personally attack defense counsel during closing argument, and while the prosecutor improperly elicited evidence of the defendant's arrest and detention, the error was harmless. [848]

COMPLAINTS received and sworn to in the West Roxbury Division of the District Court Department on September 1, 2000, and November 2, 2000, respectively.

The cases were tried before *Robert C. Rufo,* J.

*Daniel F. de Abreu* for the defendant.

*Douglas E. Zemel,* Assistant District Attorney (*Catherine N. Tucker,* Assistant District Attorney, with him) for the Commonwealth.

GRAHAM, J. A District Court jury convicted the defendant of

assault and battery and also of disorderly conduct. On appeal, the defendant contends the following: the trial judge improperly admitted evidence of prior bad acts involving the defendant and the victim; the prosecutor impermissibly called the victim to testify with the sole purpose of impeaching her; and the prosecutor improperly criticized defense counsel, vouched for Commonwealth witnesses, and elicited testimony about the defendant's arrest and incarceration. We reverse the judgment as to the assault and battery because admission of the prior bad acts, over the objection of the defense, was error.

*Background.* We summarize the facts the jury could have found, reserving certain details for discussion in connection with the specific issues raised. The defendant was charged in three complaints with assault and battery by means of a dangerous weapon, assault and battery (two counts), disorderly conduct, use of a motor vehicle without authority, and malicious destruction of property,[1] arising out of three incidents involving his girlfriend, Carrie Jones. Jones initially accused the defendant of assaulting her, but later recanted the accusations.

The first incident for which the defendant was tried occurred on August 28, 2000. Boston police Officer Lyndon Christian responded to a call from an apartment at 12 American Legion Highway in the Dorchester section of Boston, where the defendant lived with Jones. Jones was seated in an ambulance being treated for bruises and swelling around her right eye. The area around her eye was swollen and the injury appeared to be fresh. In response to questioning by Officer Christian, Jones stated that her boyfriend had punched her. Jones was upset and crying at the time. The defendant was arrested several days later and charged with assault and battery and use of a motor vehicle without authority.

The second incident occurred at approximately 11:00 P.M. on November 1, 2000. Boston police Officer Ricky Cooks was dispatched to 24 Calder Street in Dorchester on a report of a disturbance. He arrived at that address and saw the defendant banging on a car windshield and yelling at Jones, who was inside the car. Calder Street is in a residential area. Several of

---

[1]The latter two charges were dismissed before the start of trial at the Commonwealth's request.

the residents were attracted to the scene as a result of the noise. The defendant was arrested and charged with disorderly conduct and malicious destruction of property.

The remaining complaint against the defendant arose from an incident reported by Jones to the Boston police department on April 7, 2001. Jones, accompanied by her daughter, reported to the desk sergeant that on the previous evening, the defendant took her car keys; assaulted her, knocking out two of her teeth; burned her genitals with a lit cigarette; and forced her to have sex with him. The defendant was arrested and charged with assault and battery by means of a dangerous weapon, to wit, a lit cigarette, and assault and battery.

Shortly after the criminal complaints issued, Jones became an uncooperative witness. Prior to the scheduled start of trial, she recanted all charges she had made against the defendant and stated that her injuries were all self-inflicted.

Faced with a reluctant witness, the Commonwealth moved in limine to admit as spontaneous utterances statements Jones made to the police immediately following the incidents that were the subject of the complaints. The Commonwealth also sought to introduce in evidence several prior bad acts of the defendant, including two restraining orders that Jones had taken out against him. In addition, the Commonwealth sought to introduce evidence that the defendant previously struck Jones in the face, causing her to suffer a black eye. After a hearing, the judge allowed the Commonwealth's motion to introduce in evidence Jones's spontaneous utterances, but reserved judgment on whether to allow evidence of the prior misconduct.[2]

In her opening statement the prosecutor told the jury that Jones, the defendant's girlfriend, would tell a version of the events that differed from her earlier reports to the police. The prosecutor asked the jury to focus on the Commonwealth's witnesses who would follow Jones.

*Trial.* At trial the prosecutor called Jones as the Commonwealth's first witness. Jones testified that for the past seven years, the defendant, who lived at 12 American Legion

---

[2]The judge stated he was leaving open the possibility for the Commonwealth to use the prior bad acts for the purpose of showing motive, pattern of conduct, and the relationship between Jones and the defendant.

Highway, had been her boyfriend. Regarding the August 28, 2000, injury, Jones testified that she hurt her lip while smoking cocaine in a glass pipe, and sustained an eye injury in a fight that evening with an unidentified person in a "base house"[3] in a fight over drugs. She further stated that after leaving the base house she went to the defendant's apartment where she stayed for approximately one hour prior to calling the police for medical assistance. She denied that the defendant hurt her and testified that because the defendant had refused to give her money, she falsely told the police he had pushed her out of the apartment.

Regarding the April, 2001, incident, Jones testified that she was with the defendant at his apartment from April 4 through April 6. During that period the defendant had many visitors stopping by to see how he was doing because he was ill. She testified that she cut her lip while smoking cocaine using a broken glass pipe. With respect to her two missing bottom teeth, Jones stated that the teeth were loose and, while she was eating barbeque ribs at a Chinese restaurant near her home, she bit on a bone, dislodging the teeth. She stated that she falsely accused the defendant of assaulting her after she became angry with the defendant because he had allowed another woman to live in their apartment.[4]

The prosecutor then turned to the prior bad act evidence. She questioned Jones about the June, 1998, incident in which Jones received a black eye and about the two restraining orders Jones had taken out against the defendant in July and September, 1998. Prior to the prosecutor's questions in this area, the judge gave the jury a limiting instruction.[5] Jones testified that she had no recollection of speaking to the police about an incident in

---

[3]Jones explained that a base house is a place where people who are addicted to drugs use drugs. The houses are open day and night.

[4]The apartment at 12 American Legion Highway was rented by the defendant. During the relevant time period relating to the charges against the defendant, Jones was homeless and frequently stayed at the defendant's apartment.

[5]The judge instructed as follows:

"Ladies and gentlemen of the jury, I'm now about to make what's called [a] limiting instruction prior to the testimony that you're about to hear. Now the defendant is not charged with committing any other

June in which she had a black eye. Regarding the two restraining orders, she recalled only obtaining the order of July 27, 1998.[6]

Finally, the prosecutor asked Jones a series of questions regarding injuries and hospital visits she made in August and October, 1998. Jones explained that she frequently spent the night in base houses and occasionally fought with other occupants. She was also drinking alcohol heavily and, in her efforts to become sober, injured her throat while trying to disgorge the alcohol she had ingested.[7]

Following Jones's testimony, Sergeant Debra Jenkinson of the Boston police department and Jones's daughter, Rochelle Emuedue, testified about the April, 2001, incident. Sergeant Jenkinson testified that Jones reported to the police station with her daughter and granddaughter at approximately 10:30 A.M. on

crime, or crimes, other than those that were read to you by the Clerk Magistrate this morning. So he's charged in criminal complaints with that particular conduct at that particular point in time.

"Now you may hear mention of other acts allegedly done by this defendant but you may not take any of that testimony as a substitute for proof that the defendant committed the acts for which he's been charged in this complaint nor may you, ladies and gentlemen of the jury, consider the evidence, if any evidence comes out here today of so called prior misconduct or prior acts as proof that the defendant has a so called criminal personality or bad character.

"You may consider evidence of prior misconduct solely on the limited issue, meaning that its admissibility may tend to show motive, opportunity, a state of mind, intent, preparation, planning, a pattern of conduct or the nature of the relationship between Ms. Jones and this defendant.

"Again, ladies and gentlemen of the jury, you may not consider this evidence for any other purpose. Specifically, you may not use this evidence to conclude that the defendant has committed the acts for which he stands accused here today."

[6]The prosecutor later offered in evidence the September 10, 1998, restraining order.

[7]The prosecutor also attempted to elicit testimony from Jones concerning injuries she allegedly sustained in August and October, 1998, and November, 2001. In each instance Jones stated either that she could not recall if she had been injured or that she had caused the injury to herself.

April 7. Jones, whose lip was cut and swollen, was wearing a shirt stained with dried blood. She reported that after staying with the defendant on April 7, she wanted to leave the apartment. The defendant refused to give her the car keys, punched her in the face, and forced her to have sex with him. In addition, she claimed he burned her genital area with a lit cigarette, placed a mattress against the door and refused to let her leave the apartment, beat her over the course of the following two days, and forced her to have sex with him after each beating.

Emuedue repeated much of the testimony provided by Sergeant Jenkinson. She testified that she was driving in the area of the defendant's apartment looking for Jones. At the gasoline station near the defendant's apartment she saw Jones. Jones's lip was very swollen, but her major complaint was that the defendant had taken her keys and would not return them. Emuedue persuaded Jones to report the matter to the police. After leaving the police station, Emuedue drove Jones to the hospital where she was examined and treated.

Following Emuedue on the stand was Boston police Officer Steve Horne, who testified about the uncharged incident of June 18, 1998. Prior to Horne's testimony, the judge again instructed the jury on the limited nature of the evidence. Horne testified that he was dispatched to Blue Hill Avenue in the Mattapan section of Boston where he observed Jones crying, with a cut under her right eye. The area around her eye was "black" and "puffy." Officer Horne asked Jones where she had been previous to the injury. She told him that she had just been in apartment 3 at 12 American Legion Highway.[8]

The final two Commonwealth witnesses were Boston police Officers Lyndon Christian and Ricky Cooks, who testified to the events of August and November, 2000, previously described. The defendant called as his only witness Boston police Officer Hubert Valmond. He painted a very different picture of the

---

[8]The prosecutor was not permitted to ask Officer Horne if Jones told him how her eye had been injured. The judge, however, as part of his limiting instructions, told the jury, "you've heard mention of other acts allegedly done by the defendant."

April, 2001, incident. On April 6, 2001, he was dispatched to the defendant's apartment in response to a telephone call. As he arrived at the apartment building he was approached by Jones, who identified herself as the caller and stated that she wanted to retrieve her keys. Concerned about her safety, Officer Valmond asked Jones if she had been assaulted in any way. Jones replied that she had not.

Inside the apartment, Officer Valmond noted that the defendant was asleep on the bed. Together Valmond and Jones searched for the keys, but to no avail. After the unsuccessful search, Officer Valmond escorted Jones out of the apartment. While Jones was missing two bottom teeth at that time, she had no visible injuries. Officer Valmond returned to the police station and filed an incident report.

On April 7, 2001, Officer Valmond wrote a supplemental report after he learned that the defendant had been arrested for assaulting Jones. In the report he wrote that Jones, after being escorted from the defendant's apartment, (1) said she intended to walk to her daughter's apartment, and (2) said the defendant threatened to have her arrested if she could not find the keys.

The jury convicted the defendant of assault and battery on August 28, 2000, and disorderly conduct on November 1, 2000. As to the April, 2001, incidents, the jury found him not guilty of assault and battery, and the judge entered a required finding of not guilty on the assault and battery by means of a dangerous weapon charge.

*Discussion.*

*Evidence of prior misconduct.* The defendant maintains that he was denied a fair trial because the judge allowed the Commonwealth to introduce evidence of several prior bad acts that he allegedly committed against Jones. He contends that the evidence was highly prejudicial in view of its contents notwithstanding the judge's instruction as to its limited purpose.

"It is a fundamental rule that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985), *S.C.*, 423 Mass. 356, cert. denied, 519 U.S. 1045 (1996). The rule exists because "[s]uch

evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defence, raises a variety of issues, and thus diverts the attention of the jury from the [issue] immediately before [them]; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him." *Commonwealth* v. *Jackson*, 132 Mass. 16, 20-21 (1882).

An exception to this general rule may be when the evidence is admissible for other relevant purposes, *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973), and where the danger of prejudice does not outweigh the probative value of the evidence. *Commonwealth* v. *Tobin*, 392 Mass. 604, 613-614 (1984). "[S]uch evidence may be admissible, if relevant, to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." *Commonwealth* v. *Barrett*, 418 Mass. 788, 793-794 (1994). "To be admissible, evidence of uncharged conduct must usually be related in time, place, and/or form to the charges being tried. There must be, in other words, a sufficient nexus to render the conduct relevant and probative." Liacos, Brodin & Avery, Massachusetts Evidence § 4.4.6, at 155 (7th ed. 1999). Here, the prior bad acts were not relevant to any issue in the case and were offered merely to show the defendant's propensity to commit the crime.

The jury were permitted to hear evidence of the June, 1998, incident when Jones was treated for a black eye, and of the restraining orders that Jones obtained against the defendant in July and September, 1998. The Commonwealth argues that the judge's decision to admit the restraining orders was proper as they were relevant to the issue of Jones's bias. We reject this contention because Jones's bias was interjected into the trial by the Commonwealth, which called her as part of its case knowing she would deny the defendant had caused her injuries. Jones testified repeatedly that the defendant had not hurt her and that she had lied to the police when she told them that the defendant had assaulted her. The Commonwealth contends that the evidence could be received as testing Jones's credibility. However, the evidence was injected into the trial not only to show Jones's bias but as part of the Commonwealth's case.

There is no suggestion by the Commonwealth that the prior misconduct was relevant to the issue of identification; the parties had been in a seven-year relationship. Contrast *Commonwealth* v. *Jackson*, 417 Mass. 830, 835-838 (1994). Similarly, there was no issue of intent; if the Commonwealth's testimony was believed, then the defendant was the perpetrator and he acted intentionally.

Nor does the Commonwealth argue that the prior misconduct was properly admitted to show motive. There is no bright-line test to determine whether prior bad acts are being offered for the proper purpose of showing motive or state of mind or for the improper purpose of showing propensity. The matters must be decided on a case-by-case basis. See, e.g., *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 676-677 (1974) (evidence of prior beatings of the victim by the defendant was held admissible in a murder trial to show a continuing course of conduct that could have a bearing on motive); *Commonwealth* v. *Ashman*, 430 Mass. 736, 741 (2000) (evidence of the violent relationship between the defendant and the victim was allowed to show the defendant's state of mind in a murder trial); *Commonwealth* v. *Pagan*, 440 Mass. 84, 87-88 (2003) (evidence of the defendant's hostile attitude toward the victim was admitted to show his intent to kill the victim and the premeditated nature of the killing). Contrast *Commonwealth* v. *Triplett*, 398 Mass. 561, 562-564 (1986) (evidence that the defendant in a murder trial had assaulted his mother, lost his job because he could not control his temper, and received a dishonorable discharge from the Army portrayed the defendant as a violent and dangerous person and was not relevant to any issue other than his propensity to act violently); *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 468-472 (1985) (at a rape trial, there was reversible error in the admission of testimony that about twenty minutes before giving a ride to the complainant, the defendant offered a ride to a young girl, who had refused it, and that the girl's mother had reported the incident to the police).

Quoting from *Commonwealth* v. *Frank*, 51 Mass. App. Ct. 19, 23 (2001), the Commonwealth also argues that the trial judge properly admitted testimony regarding the defendant's prior misconduct because it was relevant "to describe the entire

relationship between [the defendant] and [the] victim." *Frank,* however, cannot be read so broadly. In *Frank,* this court held that evidence of out-of-State acts of sexual abuse by the defendant against a girl while she was eight to ten years old could be received not as proof of the substantive offenses, but instead to show how the relationship between the defendant and victim started and developed, to clarify and explain motive, to show a pattern of conduct, and to demonstrate sexual desire for the victim. See *id.* at 23-24.

In prosecutions such as *Commonwealth* v. *Frank, supra,* involving unlawful sexual relations, testimony regarding sexual misconduct involving the defendant and the victim before and after the conduct charged in the indictment is received as an exception to the general rule that evidence of prior bad acts unconnected to those set forth in the indictment is not admissible. The testimony is admitted to show how the relationship started and developed and to show the inclination and disposition of the defendant to commit the act charged. See *Commonwealth* v. *Bemis,* 242 Mass. 582, 585 (1922); *Commonwealth* v. *King,* 387 Mass. 464, 469-470 (1982); *Commonwealth* v. *Calcagno,* 31 Mass. App. Ct. 25, 26-27 (1991).

Prior misconduct of a defendant is admissible to prove the existence of a larger plan or to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous events, as by showing that the prior bad acts and the crime charged are inextricably intertwined. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 268-270 (1982); *Commonwealth* v. *Gollman,* 51 Mass. App. Ct. 839, 844 n.3 (2001), *S.C.,* 436 Mass. 111 (2002). However, that theory cannot be applied where the circumstances of the alleged crime are not rendered "unintelligible if the references to the [earlier incident are] omitted." *Commonwealth* v. *Brown,* 389 Mass. 382, 385 (1983). Here, the evidence of the prior misconduct added very little, if anything, to the proof of the matters on trial. The prior bad acts had, at most, remote bearing on whether the defendant committed the acts that were the subjects of the complaints.

The Commonwealth also argues that admission of evidence of the defendant's prior misconduct was proper to show that the

defendant had a history of assaulting Jones when they were together, drinking and using cocaine.[9] However, the record is devoid of evidence that provides such a linkage. The prior misconduct allowed into evidence by the judge had no, or only minimal, relevance to the issues in the trial; the purpose of introducing the prior bad acts was to show the defendant's inclination to commit the crimes charged. Evidence of prior misconduct not offered solely for the prohibited purpose of proving propensity toward crime "is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it." *Harper* v. *United States*, 239 F.2d 945, 946 (D.C. Cir. 1956). This case belongs to the second category, but if the judge had any discretion about admitting the prior misconduct, he abused it and the prejudice was "undue."

Finally, the Commonwealth argues that the evidence of the defendant's prior bad acts was a very small part of the Commonwealth's case-in-chief and that any potential prejudice to the defendant caused by the admission of the evidence was greatly reduced by the limiting instructions the judge gave during the Commonwealth's case, as well as the limiting instructions contained in the final charge to the jury. It is clear, however, that the prior bad acts were a significant part of the Commonwealth's case. The judge, commendably sensitive to the potential for undue prejudice from the introduction of the prior misconduct, attempted to limit the scope of such evidence. Nevertheless, the admission of the prior bad acts was error, and

---

[9]See, e.g., *Commonwealth* v. *Robertson*, 408 Mass. 747, 751 (1990) ("We have long recognized that '[e]vidence of a hostile relationship between a defendant and his spouse may be admitted as relevant to the defendant's motive to kill the victim spouse.' *Commonwealth* v. *Gil*, 393 Mass. 204, 215 [1984]. Even though the defendant's relationship to the victims in this case was not spousal, the evidence of prior physical violence and hostility was nevertheless relevant to whether [the defendant] might have a reason to kill the victims"). See also *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489, 492 (1986) (evidence of prior beatings by the defendant charged with armed assault with intent to murder admissible because it tended to show the defendant's state of mind toward the victim, namely hostility, which could be found to have continued up to the time of the charged offense).

given the prejudice that attaches to such propensity evidence, the error was prejudicial.

While we conclude that the introduction of the evidence of prior misconduct constituted prejudicial error regarding the defendant's conviction of assault and battery, the error was harmless on the conviction of disorderly conduct.[10] Here, the evidence was uncontroverted and substantial. The jury were warranted in convicting the defendant of this charge based upon the testimony of Officer Cooks, who was a percipient witness to the incident.

Because of the possibility that the case may be tried again on the charge of assault and battery on August 28, 2000, we briefly discuss issues that are likely to arise again at a new trial.

*Impeachment of the victim.* The defendant argues that the Commonwealth improperly called Jones to testify for the sole purpose of impeaching her recantation of her accusations against the defendant. By statute, a party may impeach his own witness with prior inconsistent statements, provided that a proper foundation is laid. G. L. c. 233, § 23. However, a party cannot rely on this statutory exception to call a witness who the party knows will offer no testimony relevant to an issue at trial solely for the purpose of impeaching that witness with prior inconsistent statements that would not otherwise be admissible. *Commonwealth* v. *Benoit*, 32 Mass. App. Ct. 111, 114 (1992).

In this case, the Commonwealth informed the jury in its opening statement that Jones would not testify that the defendant had harmed her and that it would prove its case through spontaneous utterances made by Jones. Jones did testify that the defendant had been her boyfriend for the past seven years. That testimony was significant to the Commonwealth's case because Jones told Officer Christian on August 28, 2000, that her

---

[10]If a particular error did not influence the jury, or had but very slight effect, it is not prejudicial and the verdict of the jury may stand. If, however, "one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946). See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994); *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

Commonwealth *v.* Butler.

"boyfriend" had punched her. Therefore, at least to that extent, Jones's testimony supported the Commonwealth's claim that the defendant was the one who caused the injury to her face on that date.

*Other issues.* We now turn to the claim of prosecutorial misconduct raised in this case. The defendant argues that the prosecutor vouched for the credibility of the Commonwealth's witnesses in her opening statement, personally attacked defense counsel during closing argument, and improperly elicited evidence of the defendant's arrest and detention. In her opening statement the prosecutor asserted, "That's what this defendant did and that's what you're gonna hear about . . . ." It is well-settled that "a prosecutor . . . may state anything in [her] opening argument that [she] expects to be able to prove by evidence." *Commonwealth* v. *Johnson,* 429 Mass. 745, 749 (1999), quoting from *Commonwealth* v. *Cohen,* 412 Mass. 375, 382 (1992). The comment was a statement of what the prosecutor expected to prove during the course of the trial and did not constitute improper vouching for the credibility of the witnesses.

The defendant also argues that comments by the prosecutor during closing argument, in which she told the jury not to let defense counsel "confuse" them, amounted to an improper ad hominem attack. Within reason, prosecutors may be critical of the tactics utilized by trial counsel that the jurors have witnessed themselves. See *Commonwealth* v. *Borodine,* 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Jackson,* 428 Mass. 455, 463 (1998) (references to defense counsel's use of a "smoke screen" and "mirrors" permissible).

Finally, the defendant argues that the prosecutor improperly informed the jury about the defendant's pretrial incarceration. In an attempt to establish Jones's bias in favor of the defendant, the prosecutor elicited testimony from Jones that she visited the defendant approximately three days a week at the Nashua Street jail. Although this was error, it was harmless. On retrial, however, such testimony should be excluded. See *Commonwealth* v. *Van Melkebeke,* 48 Mass. App. Ct. 364, 367-368 (1999).

*Conclusion.* For the foregoing reasons, the judgment on

docket no. 0006CR003990, disorderly conduct, is affirmed. The judgment on docket no. 0006CR003062, assault and battery, is reversed, and the matter is remanded to the District Court for retrial.

*So ordered.*