## COMMONWEALTH *vs.* MICHAEL BUTLER.

Suffolk. November 7, 2005. - December 20, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Assault and Battery. Evidence,* Prior misconduct, Relevancy and materiality.

At a criminal trial, the prosecutor's questioning of the victim concerning prior
  bad acts of the defendant, and the victim's negative answers and lack of
  memory in response, did not constitute impermissible substantive evidence
  of prior bad acts of the defendant. [573]
At the trial of criminal complaints charging the defendant with assault and
  battery, the judge did not err in admitting evidence of several bad acts that
  the defendant allegedly had committed against the complainant, where the
  evidence was probative to demonstrate the continuously hostile nature of
  the relationship between the defendant and the victim. [573-576]

COMPLAINT received and sworn to in the West Roxbury Division of the District Court Department on September 1, 2000.

The case was tried before *Robert C. Rufo*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Amanda Lovell*, Assistant District Attorney (*Catherine N. Tucker*, Assistant District Attorney, with her) for the Commonwealth.

*Daniel F. de Abreu* for the defendant.

GREANEY, J. A District Court jury acquitted the defendant of one charge of assault and battery, but convicted him of a second charge of assault and battery and of a charge of disorderly conduct. The charges stemmed from three separate altercations that the defendant allegedly had with his girl friend, Carrie Jones. The defendant appealed. The Appeals Court affirmed the disorderly conduct conviction, but reversed the assault and battery conviction. *Commonwealth* v. *Butler*, 62 Mass. App. Ct. 836, 848-849 (2005). In reversing the latter conviction, the Appeals Court concluded that the defendant had been prejudiced

by the admission of evidence of prior bad acts involving him and Jones.[1] *Id.* at 837, 846-847. We granted the Commonwealth's application for further appellate review solely to decide whether the admission of the prior bad act evidence was proper. We affirm the defendant's assault and battery conviction.

The background of the case is as follows. The charges against the defendant concerned incidents that occurred with Jones on August 28, 2000 (an alleged altercation that left Jones with a swollen eye); November 1, 2000 (a disturbance involving Jones, while she was seated inside an automobile); and early April, 2001 (an alleged altercation that left Jones with several injuries). Jones periodically lived with the defendant at his apartment in the Dorchester section of Boston; the two had been in a relationship for approximately seven years.

Prior to trial, Jones refused to cooperate with the prosecution and recanted her accusations. Despite this development, the prosecutor concluded that, based on Jones's spontaneous utterances, a case could be proved on each of the three charges. To add support to the charges, the prosecutor filed a motion in limine seeking approval to introduce evidence of one subsequent bad act involving the defendant and Jones, evidence of a prior bad act involving the defendant and his stepdaughter, and evidence of six other prior bad acts involving the defendant and Jones. (As we shall explain shortly, there was no evidence at trial concerning several of these acts). The prosecutor indicated that, if testimony about these acts could not be obtained from Jones, she expected the evidence to come in through a police officer (or other person) to whom Jones had made spontaneous utterances shortly after each alleged act. The defendant objected to "all of the bad acts coming into evidence." The judge deferred a ruling until the appropriate time at trial and directed the prosecutor to refrain from mentioning the bad act evidence in her opening statement.

The case proceeded to trial, with Jones as the Com-

---

[1] The Appeals Court concluded that "the error was harmless on the conviction of disorderly conduct" because "[t]he jury were warranted in convicting the defendant of this charge based upon the [uncontroverted] testimony of [a police officer], who was a percipient witness to the incident." *Commonwealth v. Butler*, 62 Mass. App. Ct. 836, 847 (2005).

monwealth's first witness.[2] She did not testify concerning the November 1, 2000, incident involving the defendant. With respect to the other two incidents that constituted the basis of the charges, Jones testified that she had lied to the police, the defendant had not hurt her in any way, and her injuries (which we shall describe below) had resulted from her own conduct (Jones said she had injured her lip while smoking crack cocaine from a "straight shooter,"[3] had injured herself in a fight over drugs at a "base house,"[4] and had lost two teeth while eating ribs).

The prosecutor turned to the prior bad act evidence. Recognizing that the examination of Jones had reached this stage, the judge, after conferring with counsel, gave the jury a limiting instruction about the purpose, and use, of the bad act evidence. The prosecutor then questioned Jones about (1) a black eye she had on June 18, 1998; (2) a protective order obtained by her on July 27, 1998, against the defendant; (3) a protective order obtained by her on September 10, 1998, against the defendant; (4) injuries she sustained in late August, 1998; (5) injuries she sustained in October, 1998; (6) whether she knew the defendant's stepdaughter; and (7) injuries she sustained in November, 2001. The defendant objected to some of this questioning. Jones admitted that she had obtained the July 27, 1998, protective order against the defendant, but claimed that that was the only protective order she had obtained. She denied talking to the defendant's stepdaughter. Jones gave no affirmative evidence about the other acts, stating, essentially, that she could not recall any injury or even having spoken with the police, or that she had injured herself while using alcohol or drugs. The July 27, 1998, protective order was admitted in evidence over objection; the September 10, 1998, protective order was admitted without objection.

There next followed testimony on the substance of the charges

---

[2]Because Jones testified at trial and was subject to cross-examination, we see no violation of the principles stated in *Crawford* v. *Washington*, 541 U.S. 36 (2004), nor has the defendant argued any such violation.

[3]Jones testified that a "straight shooter" is a long glass instrument used to smoke "coke."

[4]Jones testified that a "base house" is a place where drug addicts go to "do" their drugs.

and as to one prior bad act of the defendant that had occurred on June 18, 1998. With respect to the August 28, 2000, incident, in proof of one assault and battery charge, Officer Lyndon Christian of the Boston police department testified that, on that date, he responded to a telephone call made from the defendant's apartment. When he arrived, Jones was being treated in an ambulance. Jones had a swollen eye and was upset and crying. She told Officer Christian that the defendant had punched her. (Her statement was admitted as a spontaneous utterance.)

Concerning the November 1, 2000, incident, in proof of the disorderly conduct charge, Officer Ricky Cooks of the Boston police department testified that, at approximately 11 P.M., he responded to a disturbance call in the vicinity of the defendant's apartment. When he arrived, he observed the defendant striking the windshield of an automobile. Jones was inside the automobile, and the defendant was yelling loudly at her.

With respect to the April, 2001, incident, in proof of the second assault and battery charge and the charge of assault and battery by means of a dangerous weapon (a lit cigarette), testimony was given by Sergeant Debra F. Jenkinson and Jones's daughter. The testimony consisted of spontaneous utterances made by Jones. Jones told the witnesses that the defendant had kept her in his apartment against her will; refused to give her the keys to an automobile; punched her in the mouth, knocking out two of her teeth; forced her to have sexual relations with him; and burned her genital area with a lit cigarette. Jones had a swollen and cut lip, was missing two teeth, and walked with a limp.

As to the June 18, 1998, bad act, the prosecutor presented the testimony of Officer Steve Horne, who stated that, on June 18, 1998, in response to a dispatch in the vicinity of the defendant's apartment, he saw Jones crying, and noticed that she had a swollen black eye as well as a laceration under her right eye. Officer Horne was not permitted to testify whether Jones had told him how her eye had been injured. He testified, however, that Jones informed him that she had been at the defendant's apartment just before the injury. Both before and after Officer Horne's testimony, the judge gave the jury another limiting instruction on the use of bad act evidence. The prosecutor of-

fered no other witnesses, and no evidence, to develop the areas of inquiry concerning Jones's alleged injuries sustained in August, 1998; October, 1998; and November, 2001, that had been referenced as bad acts in the motion in limine.

The defendant did not testify. He called one witness, Officer Hubert Valmond, who testified that, on April 6, 2001, he responded to a telephone call from the defendant's apartment and there observed Jones, who showed no signs of injury. Jones told him that the defendant would have her arrested if she could not find the keys to his automobile.

Final arguments followed. The defendant's trial counsel argued that the jury should credit Jones's trial testimony — that she had lied to police and had not been hurt by the defendant — because she was the only eyewitness to the assaults and because Officer Valmond's testimony corroborated Jones's trial testimony. On her part, the prosecutor argued that Jones "had every reason to lie" at trial, particularly to protect her boy friend. She suggested that, based on Jones's demeanor, injuries, and other corroborative evidence, Jones's initial statements to police in August, 2000, and April, 2001, as described by the Commonwealth's witnesses, were truthful. With respect to the bad act evidence, the prosecutor stated the following:

> "[N]ow, you've also heard about some other incidents other than these two assault and batteries and I've asked you to keep those in mind just for the very limited purpose of assessing the nature of the relationship between the defendant and [Jones]. Specifically, three things you heard about, two restraining orders and you're going to get [to] take these into the jury deliberation room with you and take a look at them. Two restraining orders that [Jones] obtained against the defendant and I suggest to you, that shows the nature of their relationship and his motive to do what he did. That wasn't an accident what he did to her. It was intentional what he did to her. And the third thing you heard about was also Officer Horne and he told you how he . . . found [Jones] with a black eye . . . right by the defendant's apartment. Again, that goes to the nature of the relationship, his motive to do what he did, the fact that he did this intentionally . . . ."

In his final charge, the judge reminded the jury of the prior limiting instructions on the bad act evidence, and the judge repeated the substance of his earlier instructions.

As has been stated, the jury returned verdicts finding the defendant guilty of assault and battery in connection with the August 28, 2000, incident and guilty of disorderly conduct in connection with the November 1, 2000, incident. The jury found the defendant not guilty of assault and battery in connection with the April, 2001, incident.[5]

1. The defendant argues error in the admission of the bad act evidence, contending that the evidence was irrelevant; that the Commonwealth did not identify any permissible basis for its admission; and that (assuming a basis for admission), the probative value of the evidence was substantially outweighed by its undue prejudice. There was no error.

a. The defendant maintains that, by asking questions of Jones concerning other bad acts, the prosecutor put additional bad act evidence before the jury apart from the two protective orders and the black eye Jones suffered on June 18, 1998. The prosecutor, as described in her pretrial motion in limine, had expected to offer proof of several other bad acts by the defendant against Jones. The prosecutor's questioning of Jones, and Jones's negative answers and lack of memory in response, did not constitute substantive evidence of other bad acts. The judge instructed the jury that questions posed by counsel are not evidence. Jones did not implicate the defendant in inflicting other injuries on her, and the prosecutor offered no evidence to substantiate Jones's alleged injuries in August, 1998; October, 1998; and November, 2001. The prosecutor realized this and, in her closing argument, was careful to refer only to the two protective orders and to Jones's black eye of June 18, 1998 — matters that constituted the only bad act evidence before the jury. There is, therefore, no evidentiary basis to support the defendant's current argument, and for want of such a basis the argument fails.

b. We reject the defendant's assertion that the prior bad acts evidence was irrelevant and "thrown into the mix to simply

---

[5]This incident also was the basis for a separate charge of assault and battery by means of a dangerous weapon (a lit cigarette), but the judge allowed the defendant's motion for a required finding of not guilty on this separate charge.

poison the jury against [the defendant]." "It is well settled that the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad character or propensity to commit the crime[s] charged." *Commonwealth* v. *Barrett*, 418 Mass. 788, 793 (1994), and cases cited. Such evidence, however, "is admissible for other relevant probative purposes." *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), *S.C.*, 412 Mass. 172 (1992). We have recognized a range of permissible relevant purposes, including "to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." *Commonwealth* v. *Barrett, supra* at 794. "To be sufficiently probative the evidence must be connected with the facts of the case [and] not be too remote in time." *Id.* The judge must also find that the probative value of the evidence in question "is outweighed by a risk of undue prejudice to the defendant." *Id.*

The Commonwealth has not been consistent, or clear, throughout in offering a basis for the admission of the bad act evidence. The Commonwealth's uncertainty may be attributed to the fact that our cases deal differently with the issue, characterizing permissible purposes in various ways, including in terms of motive or intent.[6] The question of admissibility of bad act evidence and whether a stated purpose is permissible

---

[6]Compare *Commonwealth* v. *Mendes*, 441 Mass. 459, 464-465 (2004) (concluding that prior bad act evidence, including defendant's use of cocaine and association with prostitutes, relevant to issue of defendant's motive to kill wife who had confronted him about extramarital activities and indicated that she would have sole control over her inheritance); *Commonwealth* v. *Cormier*, 427 Mass. 446, 450 (1998) (stating that defendant's oral threats and repeated acts of violence may indicate ill will toward wife and therefore bear directly on question whether there was motive for defendant to commit crime); and *Commonwealth* v. *Gil*, 393 Mass. 204, 215-216 (1984) (stating that evidence of hostile relationship and protective orders may be admitted as relevant to defendant's motive to kill), with *Commonwealth* v. *Pagan*, 440 Mass. 84, 87-88 (2003) (holding that prior bad act evidence admissible as probative of defendant's hostile attitude toward victim and intent to kill victim); *Commonwealth* v. *Snell*, 428 Mass. 766, 777, cert. denied, 527 U.S. 1010 (1999) (explaining that prior bad act evidence of defendant's choking wife admissible to show defendant's motive and intent); *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489, 492 (1986) (stating that evidence of prior beatings and mistreatment of victim probative of defendant's mental state and intent at time of offenses). Indeed, some prior bad acts may be admissible for multiple relevant purposes. See, e.g., *Commonwealth* v. *Ashman*, 430 Mass. 736, 741

will largely depend on the circumstances of each case, and admissibility is properly left to the sound discretion of the trial judge.

The prior bad act evidence here could not be admitted to show a pattern or course of conduct by the defendant, see *Commonwealth* v. *Gallison*, 383 Mass. 659, 672-673 (1981); to prove the identity of the defendant as Jones's assailant, see *Commonwealth* v. *Jackson*, 417 Mass. 830, 836 (1994); or to prove that the defendant acted intentionally (and not accidentally).[7] These circumstances, we think, would be readily apparent to the jury. The evidence, nonetheless, was probative to demonstrate the hostile nature of the relationship between the defendant and Jones. This purpose repeatedly has been held to be proper and relevant and, contrary to the reasoning of the Appeals Court, see *Commonwealth* v. *Butler*, 62 Mass. App. Ct. 836, 844-845 (2005), is not limited to prosecutions involving sexual abuse.[8] The two protective orders demonstrated that the defendant and Jones had, at different times, a continuous hostile relationship and had been "sufficiently estranged." See *Commonwealth* v. *Eugene*, 438 Mass. 343, 348-349 (2003) (evidence that victim obtained abuse prevention order against defendant admissible to demonstrate evidence of hostile relationship and "existence of some form of dispute, tension, or hostility between victim and the defendant"); *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 160 (1997) (protective orders obtained by victim against defendant admissible as relevant to status of their relationship); *Commonwealth* v. *Gil*, 393 Mass. 204, 215-216

(2000) (prior bad act evidence admissible to show defendant's state of mind, intent, and relationship with victim girl friend); *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), *S.C.*, 412 Mass. 172 (1992) (prior bad act evidence relevant to show relationship between victim and defendant, defendant's state of mind and motive, and identification of perpetrator).

[7] While Jones claimed at trial that she had injured herself accidentally, she never stated to anyone that *the defendant* had struck her accidentally.

[8] See, e.g., *Commonwealth* v. *Bianchi*, 435 Mass. 316, 322 (2001) (prior bad act relevant in murder case to show "hostile nature of the relationship" between victim and estranged husband defendant); *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 160 (1997) (evidence of hostile relationship may be admitted as relevant in murder case); *Commonwealth* v. *Cordle, supra* at 744 (prior bad act relevant to show entire relationship between defendant and victim in murder case).

(1984) (protective order may be admissible to show status of marital relationship). The evidence furnished by Officer Horne, to the effect that the defendant had given Jones a black eye on June 18, 1998, was relevant further to show that her relationship with the defendant had been violent. See *Commonwealth* v. *Bianchi*, 435 Mass. 316, 322 (2001) (explaining that victim's statements to sister-in-law concerning what victim said about prior assault by defendant was relevant to show hostile nature of victim's relationship with defendant). The bad act evidence, taken as a whole, demonstrated continuing animosity on the defendant's part toward Jones. Without the evidence, the jury would have had difficulty in understanding why Jones was testifying that the defendant had not harmed her or behaved criminally. The jury were entitled to consider evidence that depicted the hostile relationship between Jones and the defendant and helped to explain her recantation, so that they could adequately assess her credibility, a central issue at trial.

With relevance established, we are left with a case where the judge could properly determine that any possible prejudice from the bad act evidence did not outweigh its probative value, and with the jury's consideration of the evidence confined by repeated limiting instructions,[9] and assisted by appropriate closing argument from the prosecutor. Although not critical to our result, we note that the jury appear to have paid attention to the judge's warnings about misuse of the evidence because they acquitted the defendant on the serious assault and battery charge based on his alleged conduct in April, 2001.

2. The defendant's conviction of assault and battery is affirmed.

*So ordered.*

---

[9]The judge's limiting instructions gave multiple reasons for introduction of the evidence, all proper in themselves if supported by the proper circumstances. The instructions could have been more focused on the basis for admission of the evidence that we have discussed in the text. The jury, however, could not have misunderstood the limiting point — that the evidence was not admitted for propensity or bad character, but rather to show the hostile relationship that had existed between the parties.