NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-218

COMMONWEALTH

vs.

DAVID NADEAU.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, David Nadeau, appeals from convictions, after a jury trial in the Superior Court, of assault and battery on a family or household member, G. L. c. 265, § 13M (a), assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), and possession of an electric stun gun, G. L. c. 140, § 131J; 501 Code Mass. Regs. § 8.08(1).[1] Concluding that the victim's testimony concerning the defendant's abuse of her

---

[1] The conviction for possession of the stun gun was filed, but without the defendant's consent or compliance with the requirements of Mass. R. Crim. P. 28 (e), 453 Mass. 1501 (2009). Accordingly, that conviction is properly before us. See Commonwealth v. Caetano, 470 Mass. 774, 777 (2015), rev'd on other grounds, 577 U.S. 411 (2016). The defendant makes no argument on appeal about the constitutionality of this charge, and thus we do not address that question. Cf. Commonwealth v. Shehadi, 105 Mass. App. Ct. 60, 70 n.2 (2024).

in West Virginia was relevant as it showed the increasingly hostile nature of the relationship between the defendant and the victim, we affirm.

1. Standard of review. "[E]vidence of prior bad acts 'is not admissible to show a defendant's bad character or propensity to commit the charged crime.'" Commonwealth v. Facella, 478 Mass. 393, 403 (2017), quoting Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006). "Such evidence may, however, 'be admissible for another purpose,' such as to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" Commonwealth v. Peno, 485 Mass. 378, 385 (2020), quoting Mass. G. Evid. § 404(b)(2) (2020).

"[E]ven if offered for a permissible purpose, bad act evidence nevertheless is inadmissible where 'its probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk.'" Commonwealth v. Correia, 492 Mass. 220, 228-229 (2023), quoting Mass. G. Evid. § 404(b)(2) (2023). "Determinations of the relevance, probative value, and prejudice of such evidence are left to the sound discretion of the judge, whose decision to admit such evidence will be upheld absent clear error." Commonwealth v. Oberle, 476 Mass. 539, 550 (2017), quoting Commonwealth v. Robidoux, 450 Mass. 144, 158 (2007). "An error

2

is not prejudicial if it did not influence the jury, or had but very slight effect."  Commonwealth v. White, 103 Mass. App. Ct. 655, 659 (2024), quoting Commonwealth v. Souza, 492 Mass. 615, 627 (2023).

2.  Prior bad acts.  The evidence of the conduct in West Virginia served to show the escalating, violent nature of the defendant and victim's relationship.  See Commonwealth v. Butler, 445 Mass. 568, 576 (2005) (prior bad act evidence admissible to show "continuing animosity on the defendant's part toward [the victim]").  The victim first explained how the initially happy relationship changed in 2020 when the defendant "turned into somebody that he wasn't," becoming verbally abusive and controlling, including limiting her contact with her family. The victim then explained that, while in West Virginia in August 2020, the defendant became angry with her and began "[p]ulling out my hair, hitting me with a belt, [and] choking me with a belt."[2]  Despite suffering bruises and lost hair, the victim permitted the defendant to continue to live with her after he separately returned to Massachusetts, a decision she regretted by the time of trial.

---

[2] The defendant was charged with this abuse in West Virginia and pleaded guilty.  The judge excluded any evidence of police or court involvement and prohibited the prosecutor from impeaching the defendant's credibility with certified convictions related to the West Virginia incident.

The victim's testimony concerning the defendant's conduct in West Virginia was particularly relevant as it provided context to explain the victim's inaction following the defendant's abuse of her during the September 2020 incident.[3] See Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018) ("Once the jury had knowledge that the victim alleged this was part of an ongoing, continuous abusive relationship, the victim's actions and reactions make logical sense").  The short time period between the West Virginia incident and the September 2020 incident and the similar course of conduct exhibited by the defendant during each incident helped to explain what "could have appeared to the jury as . . . essentially inexplicable act[s] of violence."  Commonwealth v. Gonsalves, 488 Mass. 827, 836 (2022), quoting Commonwealth v. Bryant, 482 Mass. 731, 735-736 (2019).  Likewise, this evidence supported the victim's testimony that the sexual acts between her and the defendant were involuntary.  See Commonwealth v. Pillai, 445 Mass. 175, 183 (2005), quoting Commonwealth v. King, 387 Mass. 464, 472 (1982) ("evidence of the other offense would likely be admissible not only to show a common pattern of conduct, but

---

[3] After being physically abused by the defendant, the victim remained in the car with him throughout the entirety of the night, even when he was asleep.

4

also 'to corroborate[] the victim's testimony' and 'render[] it not improbable that the acts charged might have occurred'").

Moreover, the "uncharged conduct was supported only by the victim's testimony, so the admission required no change in the defense theory that [the victim] was fabricating the abuse." Childs, 94 Mass. App. Ct. at 74. The challenged testimony made up only a small portion of the victim's overall testimony, amounting to less than ten total pages, and the defendant made passing references to the incident on cross-examination, covering just two pages.[4] Cf. Dwyer, 448 Mass. at 128 ("The jury heard more about uncharged sexual assaults than they did about the crimes charged"). The incident was not too remote in time as it occurred one month prior to September 2020 incident. See Peno, 485 Mass. at 386, quoting Butler, 445 Mass. at 574 ("To be sufficiently probative the evidence must be connected with the facts of the case [and] not be too remote in time"). Finally, "[t]he judge also provided a limiting instruction to the jury regarding the prior bad act evidence when it was offered and again in his final charge, thus minimizing any prejudicial effect." Commonwealth v. Almeida, 479 Mass. 562, 569 (2018). See Bryant, 482 Mass. at 737 (jury presumed to follow limiting

---

[4] The victim's and defendant's total testimony amounted to over ninety pages and forty pages, respectively.

5

instructions on other bad act evidence).  The judge acted within her discretion in the admission of the defendant's prior bad acts.

Judgments affirmed.

By the Court (Ditkoff, Hand & Walsh, JJ.[5]),

Clerk

Entered:  March 31, 2025.

---

[5] The panelists are listed in order of seniority.