NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1195

COMMONWEALTH

vs.

TIMMOTHY R. MARTINS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2024, a District Court judge found the probationer in violation of the terms of his probation and sentenced him to eighteen months in the house of correction, twelve months to serve, the balance suspended for two years.  On appeal, the probationer argues that the judge (1) abused his discretion when he allowed the complaining witness to testify about inadmissible prior bad acts of the probationer, and (2) erred in finding the complaining witness credible.[1]  We affirm.

Background.  On November 23, 2021, the probationer pleaded guilty to assault by means of a dangerous weapon in violation of

---

[1] Appellate counsel submitted the probationer's arguments pursuant to Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981).

G. L. c. 265, § 15B (b), and was placed on probation until November 22, 2023.  On October 14, 2023, the probationer was arrested, we infer for battering the complaining witness.[2]  On January 5 and 11, 2024, a judge held a probation violation hearing.  He heard testimony from the probation officer, the complaining witness, and the responding police officer.  We summarize the testimony as follows.

At about 12:25 A.M. on October 14, 2023, Officer Keith Almeida responded to a call concerning a disturbance.  When he arrived, he saw two women:  the complaining witness, who was crying, and her friend, K.O., sitting next to her.  The complaining witness's eye was swollen.  K.O. told Officer Almeida that the complaining witness and the probationer were dropping K.O. off at her home when the probationer and the complaining witness got into a verbal altercation that "got physical."

The complaining witness testified that she had been driving the probationer around earlier in the evening.  At some point, the probationer "jumped out of [her] car and was walking around where he would go get drugs" because that is "what he does."  Later, she and K.O. picked him up; K.O. was in the passenger seat and the probationer was in the back seat.  After dropping

_____

[2] The new criminal complaint and the notice of probation violation in this case are not in the record on appeal.

2

K.O. off at her home, the complaining witness asked the probationer to hand up her dog that was in the backseat and asked the probationer to get in the front seat. She explained she did not want the probationer in the backseat because "in the past he's hit [her]" and she was concerned for her safety. The probationer refused to give her the dog or get in the front seat, so she reached into the backseat to grab the dog. As she was grabbing the dog, she felt herself being held down by the probationer as he "pound[ed]" her face. She testified that the probationer struck her at least four times before K.O. was able to remove her from the car. The complaining witness and K.O. then ran to the "first open door" they could find until the police found them hiding in a hallway. The complaining witness later sought medical treatment and was treated for a blood clot and bruising.

The judge found the probationer in violation of the terms of his probation and sentenced him to eighteen months incarceration in the house of correction, twelve months committed. The probationer timely appealed.

Discussion. An order revoking probation is reviewed for an abuse of discretion. See Commonwealth v. Bukin, 467 Mass. 516, 519-520 (2014). The Commonwealth must prove a violation of probation by a preponderance of the evidence. See Commonwealth v. Hill, 52 Mass. App. Ct. 147, 154 (2001). Because the

3

probationer did not object to the complaining witness's statements during his hearing, to the extent that we discern an abuse of discretion or other error, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

1. Prior bad acts. The probationer argues that the judge abused his discretion in admitting (1) the complaining witness's testimony elicited on direct examination that she did not want the probationer in the back seat of her car because he had previously hit her and (2) her testimony elicited on cross-examination that the probationer had previously sought out drugs, because this was inadmissible evidence of prior bad acts.[3] We disagree.

Although "standard evidentiary rules do not apply to probation revocation hearings," a finding of a probation violation must be based on reliable evidence. Commonwealth v. Durling, 407 Mass. 108, 117 (1990). Generally, "[s]pecific acts of bad conduct . . . cannot be used for the purpose of

---

[3] The probationer also challenges the admissibility as a prior bad act of the complaining witness's testimony that she was "in fear of the fact that [the probationer] called me the next day wanting me to feed him, wanting me to clothe him, wanting me to put a roof over his head." We reject this claim because the statement did not refer to a prior "bad act." Cf. Mass. G. Evid. § 404(b)(1) (2025) ("Evidence of a crime, wrong, or other act" inadmissible to prove character or demonstrate criminal propensity).

4

establishing the [probationer]'s bad character or propensity to commit the crime charged." Commonwealth v. Souza, 492 Mass. 615, 620 (2023). However, such evidence may be admissible if it is relevant and offered for a nonpropensity purpose. See Commonwealth v. Moran, 101 Mass. App. Ct. 745, 748 (2022). "To be sufficiently probative the evidence must be connected with the facts of the case [and] not be too remote in time" (citation omitted). Commonwealth v. Butler, 445 Mass. 568, 574 (2005). "The judge must also find that the probative value of the evidence in question 'is [not] outweighed by a risk of undue prejudice to the defendant'" (citation omitted). Id. The judge has broad discretion to make admissibility determinations. Moran, supra at 750.

In the context of a domestic violence allegation, a probationer's prior acts of domestic violence are often relevant "to depict the existence of a hostile relationship between the [probationer] and [the complainant]" (citation omitted). Commonwealth v. Oberle, 476 Mass. 539, 550-552 (2017). This theory of relevance is clearest where the complainant initially accuses the probationer of assault and then recants. See, e.g., Butler, 445 Mass. at 576 (evidence of hostile relationship relevant to assess victim's credibility where she recants accusation of domestic violence). Here, the complaining witness testified at the probation violation hearing and maintained that

the probationer assaulted her. But in this case "the existence of a hostile relationship" was still relevant, because the probationer asserted that the complaining witness was the first aggressor and that he punched her in self-defense. See Commonwealth v. Adjutant, 443 Mass. 649, 663-664 (2005). Thus, the complaining witness's allegation of prior domestic violence -- "in the past he's hit me" -- was relevant to that issue. Accordingly, it was not error to consider this testimony.

The complaining witness's testimony that she assumed the probationer jumped out of the car to look for drugs stands on somewhat different footing. Defense counsel elicited it on cross-examination to establish the complaining witness's bias and impeach her credibility. To that end, defense counsel also played a voicemail message in which the complaining witness called the probationer a "fucking crackhead," demonstrating her animosity toward him. Because the defense elicited this testimony, the defense cannot claim error in its admission, so long as the choice to elicit it was reasonable. See Commonwealth v. Jordan, 50 Mass. App. Ct. 369, 370-371 (2000). Therefore, the question is whether this was a reasonable tactical decision. Given the centrality of the complaining witness's credibility to the Commonwealth's case, defense counsel's decision to pursue this line of cross-examination was reasonable. Alternatively, even if this was not a reasonable

6

tactical decision, because of the strength of the evidence, including the fact that the probationer conceded that he punched the complaining witness, it did not create a substantial risk of a miscarriage of justice. See Commonwealth v. Williams, 102 Mass. App. Ct. 626, 631 (2023).

2. Witness credibility. The probationer argues that the complaining witness's credibility was "tenuous" and the judge should not have considered her testimony in determining whether a preponderance of the evidence established that the probationer had violated his probation by being charged with a new crime. Generally, though, "we do not disturb the judge's credibility determinations as fact finder" in a probation revocation hearing. Commonwealth v. Nunez, 446 Mass. 54, 59 (2006). See Bukin, 467 Mass. at 521 ("It is the exclusive province of the hearing judge to assess the weight of the evidence"). We

discern no abuse of discretion in the judge's evaluation of the complaining witness's credibility.

<u>Order revoking probation and imposing sentence affirmed</u>.

By the Court (Hand, Grant & Wood, JJ.[4]),

<i>Paul Settle</i>

Clerk

Entered:  May 29, 2025.

---

[4] The panelists are listed in order of seniority.